**STATE FARM MUTUAL AUTOMOBILE INSURANCE, Respondent,**

v.

**Basil McGUIRE, et al., Appellants.**

**No. WD 50087.**

Missouri Court of Appeals, Western District.

Sept. 5, 1995.

Robert L. Shirkey, Kansas City, for appellants.

Edward W. Mullen, Deacy & Deacy, Kansas City, for respondent.

Before BERREY, P.J., and ULRICH and ELLIS, JJ.

ELLIS, Judge.

This case involves a coverage dispute under an automobile insurance policy issued by State Farm Mutual Automobile Insurance Company to Basil and Virginia McGuire. The McGuires had been long-time policy holders with State Farm. On January 10, 1992, they purchased a Dodge Diplomat automobile. At that time, the McGuires owned two other cars, both of which were insured with State Farm. A week after acquiring the Diplomat, the McGuires insured it with State Farm as well. On March 1, 1992, Basil McGuire, who was driving the Diplomat, was involved in a collision with another vehicle. Virginia McGuire, a passenger in the Diplomat, suffered injuries as a result of the accident.

On August 3, 1992, Virginia McGuire filed a petition for damages in Jackson County Circuit Court against her husband and Joseph Gautieri, the driver of the other vehicle. While that case was still pending, on May 19, 1994, State Farm filed a three count petition in Jackson County Circuit Court. In Count I, it sought interpleader; Count II sought declaratory judgment to determine the rights and liabilities of State Farm and the McGuires under the insurance policy; and Count III sought a judgment reforming the automobile liability insurance policy to conform to what State Farm contended was the intent of the parties. State Farm alleged

that a Kansas policy form booklet, No. 9816.6, which had been attached to the McGuires' declaration page, was the wrong booklet. State Farm attached, as an exhibit to the petition, a copy of Missouri policy form booklet No. 9825.5, which it contended was the policy form both parties had intended to be issued. At the time it filed its petition, State Farm paid $25,000 into the circuit court's registry, which it claimed was the maximum possible amount owed under the Missouri policy. As the McGuires' recovery would be less under the Missouri policy, they answered, denying that policy form 9825.5 was the insurance policy the parties had intended to be issued and counterclaimed for payment under policy form 9816.6.[1]

The evidence at trial showed that the McGuires' State Farm agent, Harvey Haeker, is licensed in both Kansas and Missouri. His office is located in Overland Park, Kansas, and he has been at that location since 1989. At that time, State Farm had transferred to Haeker some of the business of its retiring agents. Because the McGuires' former agent retired, Haeker acquired their business at that time and they continued to use him as their agent.

On January 17, 1992, seven days after acquiring the Diplomat, Virginia McGuire called Haeker's office to request insurance on the car. She spoke with Leeann Williams, Haeker's assistant. After speaking with Ms. Williams, the McGuires completed and signed an application for insurance and mailed it, along with a premium check, to Haeker's office.[2]

State Farm has different applications and policy forms for Kansas and Missouri. Policy form booklet 9825.5 is a policy used in Missouri; policy form booklet 9816.6 is used in Kansas. Since Haeker was licensed in both states, he kept a supply of both at his office. If a client submits an application for a Missouri policy, Haeker's office forwards the application and premium payment to the regional office in Columbia, Missouri; if the application is for a Kansas policy, the application and premium check are sent to the regional office in Tulsa, Oklahoma. After the respective regional office processes the application and returns a declarations page to Haeker's office, Haeker or one of his employees attaches the appropriate policy form booklet to the declarations page.

Because the McGuires lived in Missouri and had insured both of their other cars under Missouri policy form 9825.5, their application and premium check were sent to the Missouri regional office in Columbia. After Haeker's office received the declarations page from the Columbia office, one of his employees inadvertently attached a Kansas booklet form 9816.6 to the declarations page and mailed it to the McGuires. The written policy which the McGuires received included the declarations page issued from the Columbia regional office which showed the applicable coverages and amounts and stated: "Your policy consists of this page, any endorsements, and the [Missouri] policy booklet form 9825.5." However, the Kansas policy booklet form 9816.6 was attached to the declarations page rather than the Missouri form 9825.5. Several important differences exist between the Kansas and Missouri policies. First, the declarations page (reflecting the Missouri policy) showed Coverage C for medical pay with a premium charge, whereas the

---

1. State Farm also named as defendants Research Medical Center and the U.S. Department of Health and Human Services, Health Care Financing Administration. Research was interpleaded because it had a hospital lien and the Department of Health was interpleaded because it had a medicare lien, both arising out of Mrs. McGuire's injuries. Also, State Farm joined Joseph Lee Gautieri, the driver of the other vehicle, who had filed a cross-claim for contribution against Basil McGuire in the damage suit brought against both drivers by Virginia McGuire.

The trial court granted summary judgment in favor of the Department of Health and dismissed Research Medical Center. This essentially disposed of the interpleader count. Since Research Medical Center and the Department of Health were not interested parties as to the declaratory judgment or reformation counts, they did not appear at trial. Gautieri also did not appear at trial, as he determined he did not have sufficient interest in the outcome. The trial court's rulings as to these three parties are not issues in this appeal.

2. It is State Farm's custom to permit long-standing policy holders to transact business via telephone and mail.

Kansas policy contained no medical pay Coverage C. Also, form 9816.6 defines a motor vehicle as being registered in Kansas and makes reference to the right to arbitration under Kansas law.

More significantly, under the Missouri policy, there is a "household exclusion" excluding from the liability coverage a bodily injury claim of "any insured or any member of an insured's family residing in the insured's household." The Kansas policy contains no such exclusion.[3] Also, according to the declarations page (which referred to the Missouri policy), the McGuires purchased uninsured motor vehicle coverage (Coverage U) in the sum of $50,000 per person injured but limited to $100,000 per accident, but they did not purchase underinsured motorist coverage. Under the Kansas policy, underinsured and uninsured motorist coverage are the same, and are designated Coverage U. Thus, if the Missouri policy applies, the McGuires would not have underinsured motorist coverage, whereas under the Kansas policy, they would.

These last two differences are particularly important in the case at bar because Virginia McGuire would fall within the household exclusion in the Missouri policy, thereby preventing her from recovering more than $25,000 under the liability coverage for her bodily injuries. Because uninsured motorist coverage is not applicable in this case, her only hope of recovering more than $25,000 would be through underinsured motorist coverage. The Missouri policy does not provide underinsured motorist coverage whereas the Kansas policy does, up to $50,000. Therefore, the maximum amount Virginia could recover under the Missouri policy is $25,000 (plus the $5,000 medical pay under Coverage C), whereas under the Kansas policy, she could recover up to $100,000 ($50,000 liability coverage for which there is no household exclusion plus $50,000 underinsured motorist coverage).

The case was tried to the court sitting without a jury. On June 30, 1994, the trial court entered judgment with findings of fact and conclusions of law. It concluded the McGuires had not intended to purchase underinsured motorist coverage and that the coverages shown on the application form were the coverages agreed upon. The court further concluded it was the intent of the parties that the McGuires receive Missouri policy form 9825.5 rather than Kansas form 9816.6, and that the attachment of policy form 9816.6 to the declarations page was the result of a mutual mistake. It entered judgment substituting Missouri form 9825.5 for Kansas form 9816.6. The court found that the McGuires were therefore not covered by underinsured motorist insurance. The court applied *Halpin v. American Family Ins. Co.*, 823 S.W.2d 479 (Mo. banc 1992),[4] and concluded the "household exclusion" contained in the Missouri policy was invalid to the extent of $25,000. Thus, State Farm was liable for Virginia's injuries up to $25,000.[5] Because the Kansas policy would have covered her injuries up to $50,000 under the liability coverage plus $50,000 under the underinsured motorist coverage, the McGuires appeal the trial court's judgment.

The McGuires raise three points on appeal. In their first point, they contend the trial court erred in entering judgment reforming the insurance contract because the evidence established that the Kansas contract was issued solely as a result of State Farm's unilateral mistake and was therefore not subject to reformation.

The McGuires rely on *Sheinbein v. First Boston Corp.*, 670 S.W.2d 872, 877 (Mo.App. 1984), which held that ordinarily, a unilateral

---

3. Although the policy completely denies coverage for bodily injuries to insureds and members of the insured's household, the Missouri Supreme Court has held this exclusion to be invalid to the extent of $25,000. *Halpin v. American Family Ins. Co.*, 823 S.W.2d 479 (Mo. banc 1992). Thus, the household exclusion under the Missouri policy is valid only as to claim amounts in excess of $25,000.

4. See note 3, *supra*.

5. The U.S. Department of Social Services has already been paid $11,059.87 out of the $25,-000.00 deposited into the court's registry by State Farm. The court ordered the remaining balance ($13,940.13) be returned to State Farm pending resolution of Virginia McGuire's pending action against her husband and Joseph Gautieri.

mistake will not support the reformation of a contract. Although reformation generally is appropriate only where there was a mutual mistake by the parties, the court in *Shein-bein* enumerates exceptions to this rule. *Id.* However, because we find there was a mutual mistake, we need not discuss whether one of the exceptions applies.

The evidence showed that when the McGuires telephoned Haeker's office and applied for the policy on the Diplomat, they intended to get appropriate insurance for Missouri residents with a vehicle titled in Missouri. They intended to purchase the same type of insurance they had on their other two vehicles (which was the Missouri form 9825.5).[6] They had not applied, nor did they intend to apply, for underinsured motorist coverage. In fact, they did not even know what it was. Both of the McGuires testified that when they received the policy, they did not read it, and they never knew they had been issued a Kansas policy. Furthermore, the declarations page showed a $5,000 coverage for medical costs, whereas no such coverage was provided in the Kansas booklet. The McGuires collected the $5,000 coverage for Mrs. McGuire's medical expenses, which they would not have received under the Kansas policy.

We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Where a contract is sought to be reformed on the ground of mutual mistake, such a mistake must appear by clear and convincing evidence. *Stein v. Stein Egg & Poultry Co.*, 606 S.W.2d 203, 205 (Mo.App.1980). However, it is sufficient to show the parties agreed to accomplish a particular goal and the instrument as executed is insufficient to effectuate their intentions. *Sperrer v. Sperrer*, 573 S.W.2d 693, 695 (Mo.App.1978).

We find there was clear and convincing evidence in the record to show a mutual mistake regarding the attachment of the Kansas policy form booklet 9816.6 to the Missouri declarations page. Both parties intended the Missouri policy to apply and the instrument as executed did not effectuate that intention. Thus, the trial court did not err in concluding that the parties had intended the Missouri policy to apply rather than the Kansas policy, that there was a mutual mistake in the attachment of the Kansas policy form to the declarations page, and that this warranted a reformation of the contract. Point I is denied.

In their second point, the McGuires contend the trial court erred in reforming the insurance contract because it substituted an entirely new agreement when there was no evidence that the substituted contract was the one to which the parties had agreed.

As the McGuires assert, in order to have a reformation of a contract, there must have been a valid prior agreement between the contracting parties. *See Edwards v. Zahner*, 395 S.W.2d 185, 190 (Mo.1965). However, they claim "the testimony in this case fails to establish the existence of a valid prior agreement and terms of that agreement." The basis of their argument is that the application was not an agreement: it was an offer. They assert that because State Farm made notations on the application form, allegedly changing the terms, this constituted a counter-offer, and that the resulting agreement was the policy as it was sent to them.

This argument fails for two reasons. First, the evidence of the agreement goes beyond the application for insurance. The parties had telephone conversations, as was their custom, and agreed that the Diplomat would be covered with the type of insurance appropriate for Missouri residents with a Missouri automobile. They agreed that the Diplomat would be covered with a policy

---

**6.** The evidence did show the McGuires requested that the property damage liability coverage should be increased to $50,000, rather than the $25,000 on the other two policies, and that the uninsured motor vehicle coverage should be in the sum of $50,000 per person/$100,000 per ac-

cident rather than the $25,000/$50,000 uninsured motorist coverage on the other two policies.

Neither of the other two vehicles had underinsured motorist coverage.

similar to the policies on the McGuires' other two vehicles, namely, the form 9825.5 policy.[7] The application did not change the fact that the parties had already agreed to certain insurance, it merely reflected the agreement. In other words, the agreement existed even without the application.

Second, even if the application did constitute an offer, the notations made by State Farm on the application did not alter the terms reflected in the application. State Farm presented evidence that when an insured acquires a new car, State Farm will automatically provide coverage during the period between acquiring the car and when the new policy goes into effect. Thus, the McGuires' Diplomat was automatically covered up to the limits on the policies they held on their other cars during the eleven days between when they acquired the car and when the new policy went into effect. The notations made on the application form referred to the coverage on the Diplomat during that eleven-day period before the new policy went into effect, and had nothing to do with the terms of the new policy. Thus, the notations did not alter the agreement evidenced by the telephone conversations and the application and, therefore, was not a counter-offer.

The crux of the matter is that the McGuires and State Farm had entered into an agreement whereby State Farm would insure the Diplomat with insurance appropriate in Missouri and similar to the policies they held on their other two vehicles. Both parties understood that a Missouri policy was to be issued and neither party believed the McGuires were purchasing underinsured motorist coverage. The trial court was convinced that Missouri policy form 9825.5 was the policy both parties had intended to constitute the contract of insurance and the evidence supports such a finding. The McGuires' second point is denied.

In their final point, the McGuires assert the trial court erred in reforming the contract because the evidence established State Farm was guilty of laches and is therefore estopped from asserting a right to reformation after a loss had occurred. The McGuires allege State Farm is guilty of laches because it did not discover that the wrong booklet had been attached to the declarations page until after Virginia McGuire filed a claim under the policy, more than six weeks after the mistake was made.

This argument is without merit. In the first place, we decline the McGuires' express invitation to take judicial notice that insurance carriers retain copies of the insurance policies issued to their insureds. We find no authority for taking such notice and the evidence does not support the McGuires' contention.[8] Second, the McGuires admitted they were in possession of the actual document and never read it.[9] As we already discussed, the mistake was mutual. The McGuires' claim that they simply relied on State Farm to supply the correct booklet is of no assistance to them. They could not have detrimentally relied on the Kansas policy because they had no idea they had received the Kansas policy with the higher coverage. Basically, the McGuires were hoping to take advantage of the mistake made by Haeker's office and receive benefits which they neither requested nor paid a premium to receive. Under these circumstances, State Farm was not guilty of laches. Point denied.

The judgment of the trial court is affirmed.

All concur.

---

7. As noted, *supra,* the McGuires did request additional liability and uninsured motorist coverage on the Diplomat. The requested changes were reflected on the application form and declarations page. However, other than those increased limits, they had intended to purchase insurance similar to that on their other cars.

8. State Farm presented evidence that records regarding policies, including the information reflected on the declarations page, are all kept on computer. If the wrong booklet were attached to a declarations page, State Farm would have no record of it.

9. In fact, the McGuires were in possession of the only physical copy of the declarations page attached to the wrong booklet. As such, once the paperwork was sent to them, they were the only ones who could have discovered the mistake.