### JENKAD ENTERPRISES, INC., Respondent,

v.

### TRANSPORTATION INSURANCE, CO., Appellant.

### No. ED 76437.

Missouri Court of Appeals, Eastern District, Division Three.

March 21, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 17, 2000.

Application for Transfer Denied June 27, 2000.

Donald L. James, Brown & James, St. Louis, for appellant.

Don R. Sherman, Lori R. Koch, St. Louis, for respondent.

CLIFFORD H. AHRENS, Judge.

Transportation Insurance Co. ("Transportation") appeals from summary judgment entered in favor of Jenkad Enterprises, Inc. ("Jenkad"). The issue on appeal is whether the insurance contract between the parties afforded hired and non-owned automobile ("HNOA") coverage between August 1, 1994 and August 1, 1995, even though the written policy in effect did not provide such coverage. We find the contract did not include such coverage. We therefore reverse and remand with instructions to enter judgment in favor of Transportation.

Jenkad manufactured pneumatic tools from its incorporation in May, 1990, until its administrative dissolution in August, 1995. Between 1990 and 1994, Transportation provided insurance coverage for Jenkad in the form of a "Manufacturer's Package," which included general liability, workers' compensation, products liability, and fire and extended coverage insurance. The package did not include HNOA insurance.[1]

In late summer of 1994, Jenkad's comptroller, Daniel Fetsch, met with David Wilson, an authorized agent of Transportation, to discuss the renewal of Jenkad's policy for the period of August 1, 1994 to August 1, 1995. At this meeting, Wilson recommended that Jenkad purchase HNOA insurance; Fetsch agreed to do so, and Wilson stated that Jenkad was "bound" for HNOA coverage as of August 1, 1994. Although Wilson specifically noted on his written renewal proposal that HNOA coverage should be added to Jenkad's policy, when he requested Jenkad's policy renewal from Transportation, he failed to request the addition of HNOA insurance. Consequently, the policy subsequently issued by Transportation did not include such coverage. Neither Fetsch nor anyone else at Jenkad read the policy and were therefore unaware of the omission.

On November 1, 1994, Gary Mills, an employee of Jenkad, was involved in an

---

1. Hired and non-owned automobile coverage provides liability insurance in the event an employee of the insured is involved in an automobile accident while acting within the scope of employment but in a vehicle that is not owned by the insured.

automobile collision with a vehicle occupied by Rosemary and Ronald Post. Mills was operating his personal vehicle within the scope of his employment. The Posts were injured and thereafter filed a negligence action against Mills and Jenkad. Jenkad tendered the defense of both suits to Transportation, but Transportation denied coverage and refused to provide a defense on the ground that Jenkad's policy did not afford coverage for hired and non-owned automobiles. Jenkad ultimately filed a four-count Second Amended Petition against Transportation, seeking: (1) reformation of the written policy to include HNOA coverage; (2) and (3) damages for breach of the duty to defend Jenkad against the Post lawsuits under a reformed policy; and, in the alternative, (4) a declaratory judgment that Transportation was obligated to provide HNOA coverage pursuant to the Fetsch–Wilson oral contract. Both parties moved for summary judgment. The trial court granted Jenkad's motion and entered summary judgment in its favor; it denied Transportation's motion. This appeal follows.

Summary judgment is appropriate only where there is no genuine issue as to the material facts and the movant is entitled to judgment as a matter of law. Rule 74.04(c)(3) (1999). As the parties are in agreement as to the material facts, we need only determine whether Jenkad was entitled to judgment as a matter of law, that is, whether the insurance contract between the parties afforded HNOA coverage. As our standard of review is de novo, we give no deference to the trial court's ruling. See ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo.banc 1993).

 At the outset, we find it necessary to discuss the nature and effect of the oral contract entered into between Fetsch and Wilson. When Wilson informed

Fetsch that Jenkad was "bound" for HNOA insurance, Jenkad and Transportation became parties to an insurance binder.[2] A binder is a contract of temporary insurance, either oral or written, effective at the date of application for permanent insurance and terminating upon the issuance, delivery, and acceptance of the policy, or by a rejection of the application; but if no policy is issued, delivered, and accepted, or the contract is not otherwise terminated, it continues until the time fixed thereby for its termination or a reasonable time has expired. First American Ins. Co. v. Commonwealth Gen. Ins. Co., 954 S.W.2d 460, 468 n. 8 (Mo.App.1997); 2 Couch, Cyclopedia of Insurance Law § 14.3, at 5 (2d ed.1984); 12A Appleman, Insurance Law and Practice § 7227, at 149 & n. 11 (1984). Its purpose is to provide coverage pending an inquiry by the insurer as to the character of the risk it is asked to insure. First American, 954 S.W.2d at 468; 2 Couch, § 14.26, at 48–50. Given the modern use of binders, we reject Jenkad's contention that Wilson and Fetsch agreed to an oral contract for permanent HNOA insurance rather than a temporary binder.

 We emphasize that a binder, being only a temporary contract, does not eliminate the need to apply for permanent insurance. In the present case, it is unclear from the record whether Jenkad made a written application for HNOA insurance. Nevertheless, at a minimum, an oral application for such coverage was made, as Wilson specifically noted on Jenkad's renewal proposal that HNOA coverage should be added to the policy. Although Wilson failed to submit the application to Transportation, the knowledge of the agent is imputed to the company. American Family Mut. Ins. Co. v. Bach, 471 S.W.2d 474, 479 (Mo.1971). An insurance company, as an artificial legal per-

**2.** Transportation freely admits that Wilson had authority to bind insurance contracts. An agent with authority to execute a written binder also has authority—at least apparent

authority—to enter into an oral binder. Chailland v. M.F.A. Mut. Ins. Co., 375 S.W.2d 78, 82 (Mo.1964).

son, can have no knowledge of any facts except as the knowledge of its various officers and agents is imputed to it. *State ex rel. John Hancock Mut. Life Ins. Co. v. Hughes,* 152 S.W.2d 132, 134 (Mo.1941). Thus, with imputed knowledge that Jenkad had applied for HNOA insurance, Transportation issued a policy that did not include such coverage.

■■■■ It has been the law in Missouri for over a century that an insured has a duty to promptly examine its policy to ensure it contains the terms of coverage desired or agreed upon, and if the policy does not, to reject it by promptly notifying the insurer of its dissatisfaction therewith. *See American Ins. Co. v. Neiberger,* 74 Mo. 167, 173 (1881); *Steward v. Mutual Life Ins. Co. of Baltimore,* 127 S.W.2d 22, 23–24 (Mo.App.1939). This is because

> [A]n application for insurance is merely an offer, which may be accepted or rejected by the company. The sending of a different policy than that applied for constitutes a counteroffer. The insured has a reasonable time to accept or reject the policy and if [the insured] keeps it a reasonable length of time, [the insured] is deemed to have accepted the policy or counteroffer. Where [the insured] keeps the policy an unreasonable length of time, [the insured] accepts it as a counteroffer, although [the insured] does not read it.

*Neuner v. Gove,* 133 S.W.2d 689, 694 (Mo. App.1939). Although Jenkad may very well have acted reasonably in assuming the policy would include HNOA coverage as provided by the binder, we find no authority which permits us to excuse Jenkad from its obligation to examine the policy. It is undisputed that Jenkad did not object to the omission of HNOA insurance from the policy at any time between delivery and the collision, which occurred approximately eight to ten weeks later.[3] We believe this was more than a reasonable amount of time in which to examine the policy and discover the omission of HNOA coverage. We hold that Jenkad failed to reject the policy within a reasonable time and is therefore deemed to have accepted it as the sole embodiment of the parties' contract of insurance.

■■■■ Jenkad is correct that an insured will not be deemed to have accepted a policy that provides coverage other than that applied for where an examination of the policy would not have revealed the discrepancies. *See Mills v. Cameron Mut. Ins. Co.,* 674 S.W.2d 244, 250 (Mo.App. 1984); *Moreland v. State Farm Fire & Cas. Co.,* 662 S.W.2d 556, 562 (Mo.App. 1983). We do not find this exception to be applicable here, however. In determining whether an insured should be deemed to have accepted a policy, we consider its maturity, experience, and knowledge regarding the subject matter. *See Kap–Pel Fabrics, Inc. v. R.B. Jones & Sons, Inc.,* 402 S.W.2d 49, 58 (Mo.App.1966). As comptroller of Jenkad, one of Fetsch's duties was to procure insurance. He had acted in such capacity with Jenkad since its incorporation in 1990, and for at least three years with another company prior to that. Clearly, he was knowledgeable and experienced in insurance matters. "More is demanded of a knowledgeable person than of one unfamiliar with the subject matter or inexperienced therein." *Id.* We are unpersuaded by Jenkad's argument that, had Fetsch examined the policy, he would not have been able to discern that it did not provide HNOA coverage. Although the policy certainly was voluminous, an examination of the declaration sheets, which set forth the policy forms and endorsement schedule for each type of coverage afforded, would have revealed no mention of HNOA insurance.

■■■■ Jenkad's acceptance of the policy is fatal to its claim for summary judg-

---

**3.** The record does not reveal the exact date the policy was delivered to Jenkad, only that it was sometime in August, 1994.

ment. Where an insured accepts a policy as a counteroffer to its application, it assents to the policy's terms and cannot thereafter seek to have the policy reformed on the ground of mutual mistake.[4] *See generally Steward,* 127 S.W.2d 22; *Galemore v. Haley,* 471 S.W.2d 518 (Mo.App. 1971). Moreover, acceptance of a policy terminates a binder and any temporary coverage provided thereby. 2 Couch, § 14.3 at 5. Accordingly, the only contract of insurance between Jenkad and Transportation in effect on November 1, 1994, the date of the collision, was that set forth in the written policy, which did not provide HNOA insurance. The trial court erred in granting Jenkad's motion for summary judgment.

"This is a hard case as to the insured, in that it is apparent that [it] applied for insurance, including [HNOA] insurance, and the company issued to [it] a policy without any such provision and without notifying [it] that [the company] had refused to grant [it] that kind of insurance, otherwise than giving [it] such notice as a reading of the policy would contain. However, we cannot relieve [it] . . . of the results of [its] negligence in failing to read the policy." *Neuner,* 133 S.W.2d at 694.

The judgment of the trial court is reversed and the case is remanded with an order that judgment be entered in favor of Transportation.

RICHARD B. TEITELMAN, P.J., concurs.

LAWRENCE E. MOONEY, J., concurs.

---

4. Jenkad's petition ostensibly seeks reformation on the ground of mutual mistake. "Reformation of an instrument is proper when it is shown by clear, cogent, and convincing evidence that the instrument fails to reflect a valid underlying agreement between the parties due to fraud, mutual mistake, or such other grounds as will satisfy the requirements for equitable relief." *United Postal Sav. Ass'n v. Norbob Enter., Inc.,* 792 S.W.2d 898, 901 (Mo.App.1990). A mutual mistake is one that is common to both parties, that is, the written instrument reflects what neither party intended. *Walters v. Tucker,* 308 S.W.2d 673, 675 (Mo.1957).