# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2595

_____

| | | |
|---|---|---|
| Secura Insurance Company, | * | |
| a Mutual Company, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Western |
| v. | * | District of Missouri. |
| | * | |
| J. R. Saunders, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  June 12, 2000

Filed:   September 18, 2000

_____

Before BOWMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
PANNER,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

J. R. Saunders brought suit against Gary and Linda Stallard after he sustained serious injury while a guest at one of their rental properties.  Secura Insurance Company then filed this action against the Stallards and Mr. Saunders seeking a

---

[1]The Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation.

declaratory judgment that the Stallards' homeowner's policy did not cover the loss. Mr. Saunders appeals the order of the district court[2] granting Secura's motion for summary judgment, and we affirm.

## I.

The Stallards, through insurance broker Mike Baker, applied to Secura for a homeowner's policy for their residence. They wanted to extend the policy's liability coverage to two of their rental properties as well, and therefore they asked Mr. Baker to request elective "Option 13" coverage. The policy application required a description of the properties for which Option 13 coverage was sought. It is undisputed that Mr. Baker did not include a description of the property in question in the application, and consequently Secura did not issue Option 13 coverage for the property.

Although Mr. Saunders concedes that the Stallards' homeowner's policy did not cover the property where he was injured, he contends that Mr. Baker had both actual and apparent authority to act as Secura's agent, that his mistaken failure to include the property description should therefore be imputed to Secura, and thus that the district court should have reformed the policy to reflect the understood terms of the agreement. The district court rejected this argument, however, concluding that Mr. Baker was the Stallards' agent and not Secura's. We agree with the district court.

Reformation of a written instrument under Missouri law is an extraordinary equitable remedy that should be granted with great caution and only in clear cases of fraud or mistake. *See Morris v. Brown*, 941 S.W.2d 835, 840 (Mo. Ct. App. 1997). Mr. Saunders alleges a mutual mistake between the Stallards and Secura, and he must therefore show a preexisting agreement between the parties and a mutual mistake as to this agreement. *See id.; see also Cockrell v. Pleasant Valley Baptist Church*, 762

---

[2]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

S.W.2d 879, 881 (Mo. Ct. App. 1989). It is undisputed that there was an agreement and that there was a mistake in carrying out the agreement. What is at issue here is whether Secura made a mistake. To answer this question we must determine whether Mr. Baker was acting as the agent of the Stallards or of Secura when he filled out the relevant application.

Under Missouri law an insurance broker is " 'primarily [the] agent [of] the person who first employ[s] him,' " *Travelers Indemnity Co. v. Beaty*, 523 S.W.2d 534, 538 (Mo. Ct. App. 1975), quoting *H&H Manufacturing Co. v. Cimarron Insurance Co.*, 302 S.W.2d 39, 43 (Mo. Ct. App. 1957). A broker may be the agent of the insurer for some purposes, and the agent of the insured for others. *See Schimmel Fur Co. v. American Indemnity Co.,* 440 S.W.2d 932, 938 (Mo. 1969). Unless some special conditions or circumstances indicate that the opposite is true, however, the presumption exists that a broker is the agent of the insured. *See Beaty*, 523 S.W.2d at 538; *see also Harper v. Business Men's Assurance Co.*, 872 S.W.2d 486, 488 (Mo. Ct. App. 1994). The broker therefore "may not be converted into an agent for the insurance company without some action on the part of the company, or the existence of some facts from which his authority to represent it may be fairly inferred," *Beaty*, 523 S.W.2d at 538, quoting *H&H Manufacturing Co.,* 302 S.W.2d at 43.

## II.

We turn first to the question of actual authority. The Stallards started doing business with Mr. Baker in 1988 or 1989, but their first purchase of a Secura policy did not occur until they purchased a dwelling fire policy for another property in 1994. Mr. Baker testified that, as an "independent insurance agent," he was free to shop around for the Stallards and to obtain the most favorable terms from the competing insurance companies with which he dealt. Although Mr. Baker had a contractual relationship with Secura giving him the authority to solicit insurance for it, the agreement provided that Mr. Baker was an "independent contractor" and that "nothing

herein shall be construed to create the relationship of employer and employee between [Secura and Mr. Baker]."

Both Mr. Baker and Mr. Stallard referred to Mr. Baker as the Stallards' agent. According to Mr. Stallard, Mr. Baker was at first a social acquaintance and became "his agent" in the late 1980's when Mr. Stallard needed insurance. Mr. Stallard concedes that he knew that Mr. Baker was dealing with a number of companies. Mr. Stallard himself had in fact previously purchased insurance -- including dwelling fire insurance for the property in question -- from other companies through Mr. Baker. Mr. Stallard further testified that "when I hired Mike [Baker] to be my agent I assumed that he was going to furnish my insurance needs. And whether it be Columbia Mutual, any insurance, that's up to Mike Baker to furnish the insurance and who he buys the insurance from." All of this provides evidence that Mr. Baker was acting as the Stallards' agent when he applied for insurance from Secura.

Mr. Saunders places undue emphasis on the fact that Mr. Baker could issue "binders" for Secura. According to Mr. Saunders, Mr. Baker's issuance of a binder on behalf of Secura establishes that he had actual authority to act as Secura's agent for the purpose of entering into insurance contracts. Binders do not constitute insurance policies, however; they are merely preliminary arrangements that provide temporary protection for the insured until the insurer issues a formal policy or rejects the risk. *See First American Insurance Co. v. Commonwealth General Insurance Co.*, 954 S.W.2d 460, 468 n.8 (Mo. Ct. App. 1997), and *Electro Battery Manufacturing Co. v. Commercial Union Insurance Co.*, 762 F. Supp 844, 850 (E.D. Mo. 1991); *see also* George J. Couch, Ronald A. Anderson, and Mark S. Rhodes, 1 *Couch on Insurance* § 13:1 (Lee R. Russ and Thomas F. Segalla, eds., 3d ed. 2000).

"The authority to bind does not make a life insurance agent a general agent with the power to create a contract of insurance. ... At most the authority to issue binders gives the agent apparent authority to make statements about binders he is authorized

to deliver." *Nichols v. Prudential Insurance Co.*, 851 S.W.2d 657, 663 (Mo. Ct. App. 1993); *see also Jenkad Enterprises, Inc. v. Transportation Insurance Co.*, 18 S.W.3d 34, 37 (Mo. Ct. App. 2000). The mere fact that Mr. Baker was permitted to issue a binder for Secura therefore does not mean that he ceased to be solely the Stallards' agent for purposes of preparing the application.

Mr. Baker's ability to change insurers and to shop around for the best terms, the language in the contract between Secura and Mr. Baker, and the fact that Mr. Baker previously obtained coverage for the property in question through a different insurer all weigh against a finding that he was Secura's agent. *See generally Electro Battery Manufacturing Co.*, 762 F. Supp at 848; *cf. Schimmel Fur Co.*, 440 S.W.2d at 938. Having examined the entire record, we can find no special circumstances rebutting the presumption that Mr. Baker was the Stallards' agent. *See Beaty*, 523 S.W.2d at 538.

### III.

Mr. Saunders also contends that Mr. Baker had the apparent authority to act as Secura's agent to issue insurance. *See generally Schimmel Fur Co.*, 440 S.W.2d at 938, and *Electro Battery Manufacturing Co*, 762 F. Supp at 851. On the record before us this argument is unpersuasive.

If a principal has in some manner invested a person with the appearance of authority, then the principal is estopped from denying that person's authority when an innocent third person thereafter relies on it. *See Inland USA, Inc. v. Reed Stenhouse, Inc.*, 660 S.W.2d 727, 733 (Mo. Ct. App. 1983); *see also* 3 *Couch on Insurance* § 48:12 ("[a]pparent authority arises when the principal acts so as to create an impression in the mind of the insured that the agent has authority to perform the acts in question").

Mr. Saunders points to the insurance application, on which Mr. Baker checked a box indicating that "[c]overage is bound," as giving Mr. Baker apparent authority to act as Secura's agent to issue insurance. Mr. Baker's ability to bind Secura cannot have invested Mr. Baker with the required appearance of authority, however, because, as we have already said, that ability is not an indicium of general agency. *See Inland USA*, 660 S.W.2d at 733. We note, furthermore, that it is undisputed that the Stallards never read the application; any references made in it relating to Mr. Baker's authority to bind Secura can therefore provide no support for Mr. Saunders's apparent agency argument. *See generally* 3 *Couch on Insurance* § 48:17. Finally, despite Mr. Saunders's argument to the contrary, the fact that Secura furnished Mr. Baker with Secura application blanks does not transform Mr. Baker into Secura's apparent agent. *See* 3 *Couch on Insurance* § 45:5.

## IV.

We believe, moreover, that the Stallards' failure to reject the policy within a reasonable amount of time after it was issued provides an alternative ground for affirming the district court. *See generally Shelter Mutual Insurance Co. v. DeShazo*, 955 S.W.2d 234, 238 (Mo. Ct. App. 1997) (*per curiam*), which treats failure to reject policy terms in a timely manner as an acceptance of those terms. Missouri imposes an affirmative duty on insureds to examine their policies promptly in order to determine whether they contain the terms agreed upon, and the failure to do so is deemed to be the acceptance of the policy as written. *See Jenkad Enterprises, Inc.*, 18 S.W.3d at 38.

Although Mr. Saunders concedes that an insured must accept or reject a policy within a reasonable time of its delivery, he argues that the formal policy was never actually issued by Secura. He bases this argument on the Stallards' claim that they did not receive the declaration page indicating what property was covered by Option 13 until after the accident. He argues that, because the complete policy did not arrive, the Stallards were not in a position to accept or reject it.

Mr. Saunders's argument is flawed, however, because the undisputed evidence establishes that Secura mailed both the complete 1995 policy and the 1996 renewal, including the two declarations pages, to Mr. Baker.  Under Missouri law the delivery of a policy to the insured's broker constitutes the constructive delivery of the document to the insured.  *See generally Adams v. Manchester Insurance and Indemnity Co.*, 385 S.W.2d 359, 366 (Mo. Ct. App. 1964); *see also* 1 *Couch on Insurance* § 14:15, stating that "[u]nder the principle which permits an effective constructive delivery, delivery may be made to an agent of the insured."

We believe that the undisputed evidence establishes that Mr. Baker was the Stallards' agent and that the policy was therefore constructively delivered to the Stallards in both 1995 and 1996.  The Stallards held the policy for an unreasonable time without objection, and we therefore conclude that they are now bound by its terms. *See DeShazo*, 955 S.W.2d at 238.

V.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.