# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

Nos. 99-2942EM, 99-2943EM
_____

_____

No. 99-2942EM

_____

Mark Andy, Inc.,

        Plaintiff-Appellee,

v.

Hartford Fire Insurance Company,

        Defendant-Appellant,

Trumbull Insurance Company

        Defendant.

_____

Hartford Fire Insurance Company,

        Third-Party Plaintiff-
        Appellant,

Trumbull Insurance Company,

        Third-Party Plaintiff,

v.

On Appeal from the United
States District Court
for the Eastern District
of Missouri.

|                                          |   |
|------------------------------------------|---|
| Lockton Insurance Agency of St. Louis, Inc., | * |
|                                          | * |
|                                          | * |
| Third-Party Defendant-Appellee.          | * |
|                                          | * |
|                                          | * |
| _____                             | * |
|                                          | * |
| No. 99-2943EM                            | * |
| _____                             | * |
|                                          | * |
| Mark Andy, Inc.,                         | * |
|                                          | * |
| Plaintiff-Appellant,                     | * |
|                                          | * |
| v.                                       | * |
|                                          | * |
| Hartford Fire Insurance Company,         | * |
|                                          | * |
| Defendant-Appellee,                      | * |
|                                          | * |
| Trumbull Insurance Company,              | * |
|                                          | * |
| Defendant.                               | * |

_____

Submitted: April 10, 2000

Filed: October 16, 2000

_____

Before RICHARD S. ARNOLD, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

-2-

This case involves a dispute over insurance coverage for flood loss. The insurance contract between the insured, Mark Andy, Inc., and the insurer, Hartford Fire Insurance Co., stated it was for $5 million in flood coverage. On the basis of the jury's findings of fact in answers to special interrogatories, the District Court reformed the contract to provide $25 million in coverage, and entered judgment in favor of Mark Andy on its claim for breach of contract. We hold that the District Court erred in reforming the contract, and we therefore reverse the judgment of the District Court.

I.

Mark Andy manufactures commercial printing presses. Its main facility is located in the Chesterfield Valley area of St. Louis County, Missouri, an area designated as a flood-risk zone. Mark Andy regularly purchases various types of insurance, including workers' compensation, general liability, and property insurance. Its insurance policies expire each March 31. Each year since 1988, Mark Andy had carried $25 million in flood insurance for the Chesterfield Valley property.

In 1991, Hartford competed for the Mark Andy 1991-92 account. Because the Chesterfield Valley facility was a "highly-protected risk," and because Hartford's St. Louis office did not have underwriting authority for the full $25 million in flood coverage sought for that facility,[1] Hartford requested flood reinsurance from Industrial Risk Insurers (IRI) and Hartford Specialty Co., an affiliate of Hartford. IRI offered $5 million and Hartford Specialty offered $20 million in reinsurance. Hartford then gave Mark Andy a quote that included $25 million in flood coverage for the Chesterfield Valley facility. The premium for the property insurance component of the quote was $22,400. Hartford did not get the Mark Andy account that year.

---

[1]At the time, Chesterfield Valley was designated as a Flood Zone C.

In March 1992, Lockton Insurance Agency of St. Louis, Inc., became Mark Andy's insurance broker.[2]  Lockton provides a variety of insurance-related services, including serving as a broker or agent for both insureds and insurance companies. Hartford was one of the insurance companies for which Lockton served as an agent.[3] Lockton did not approach Hartford for a quote for the 1992-93 Mark Andy account.

In February 1993, Lockton prepared a document for submission to various insurance companies, listing the types and amounts of coverage that Mark Andy wanted for the 1993-94 year.  This document reflected Mark Andy's continuing desire for $25 million in flood coverage for the Chesterfield Valley property.  Hartford was one of thirteen insurance companies that Lockton invited to submit a quote on the Mark Andy 1993-94 account.

Upon receiving the submission that Lockton had prepared, Hartford assigned three underwriters in its St. Louis office to work on preparing a quote.  Robert Settle was assigned to respond to the property insurance portion, which included the flood insurance.  As in 1991, Mr. Settle contacted IRI and Hartford Specialty about providing reinsurance for the flood coverage of the Chesterfield Valley property.[4]  Mr. Settle

---

[2]Mark Andy's president sent a letter to insurance companies that it was dealing with, stating in part:  "This will advise that as of March 5, 1992, The Lockton Insurance Agency of St. Louis, Inc., is the authorized agent/broker of record for this company in all matters relating to the above for purposes of negotiating and/or placing insurance coverages."

[3]Under a written agency agreement, Lockton was authorized "[t]o solicit insurance for the classes of business which the Company writes in the agent's territory and to bind, issue, and deliver policies therefor which the Company may from time to time authorize to be issued and delivered."

[4]At this point, Chesterfield Valley was designated as a Flood Zone B, which indicates a higher risk of flooding than Zone C.

asked IRI and Hartford Specialty to quote the "full limits" for flood insurance reflected in the Lockton submission.

Mr. Settle received a written quote from IRI on March 24, 1993 - the day the Hartford quote was due to Lockton for the Mark Andy account. The written IRI quote for flood reinsurance for the Chesterfield facility was for only $5 million. Upon receiving IRI's quote, Mr. Settle informed Hartford Specialty that he would not require its assistance and that it did not need to submit a quote. He then incorporated the IRI quote into the full insurance package he was preparing to give to Lockton encompassing all the insurance coverages sought by Mark Andy. The total premium for the package was $335,000; of this, the property-insurance premium was $24,400.

Mr. Settle hand-delivered Hartford's package to Lockton on the same day. Mr. Settle's cover letter to Lockton stated as follows:

> We are pleased to offer a quote on this desirable account. We feel you will find our quote competitively priced based on the exposures and information provided.
>
> The attached pages provide you with an itemized breakdown of coverages and premiums applicable. We feel this clarity will help you in your submission with the insured.

Mr. Settle and two other Hartford representatives orally presented Hartford's quote to Lockton personnel at an hour-long meeting. There was evidence from which the jury could have found that no one at the meeting noticed the difference between the flood coverage Mark Andy had requested, and the coverage that was reflected in the actual Hartford quote. The focus of the meeting was on the workers' compensation component of the quote, which was the largest component.

In addition to the Hartford quote, Lockton received quotes from other insurance companies to which it had sent its submission. Lockton compiled a summary and

comparison of different quotes. In making this summary, Lockton used its own submission document, and not the actual Hartford quote. Thus, Lockton's summary indicated (wrongly) that the Hartford quote included $25 million in flood coverage for the Chesterfield Valley property.

The next day, March 25, 1993, Lockton presented its summary report to Mark Andy. In deciding which insurance company to use, Mark Andy did not review the actual Hartford quote, but relied on the Lockton summary. Mark Andy chose to accept the Hartford quote. It is undisputed that Lockton and Mark Andy believed Mark Andy was receiving $25 million in flood coverage for the Chesterfield Valley property. On that same day, Lockton informed Hartford that its quote had been accepted by Mark Andy.

Lockton, on behalf of Hartford, then prepared and gave insurance binders to Mark Andy, effective March 31, 1993. A binder is a preliminary arrangement that provides temporary protection for the insured until the insurer issues a formal policy. The binders indicated that the different coverage amounts were specified in an attachment. Lockton attached its original submission, not the actual Hartford quote, to the binders. As a result, the binders indicated that the flood coverage was for $25 million. Hartford also received a copy of these binders. Neither Lockton, Mark Andy, nor Hartford realized there was a difference between the flood coverage in the Hartford quote and that reflected in the binders. The binders expired on June 30, 1993. Hartford delivered the actual insurance policy, which provided for $5 million in flood coverage for the Chesterfield Valley facility, to Lockton on May 7, 1993. On July 23, 1993, Lockton delivered the Hartford policy to Mark Andy.

On July 31, 1993, the Missouri River flooded the Chesterfield Valley, causing substantial damage to Mark Andy's facility, as well as interruption of its business. Hartford and IRI started adjusting the loss, based on flood coverage of $5 million. Mark Andy made a claim for $25 million. Hartford paid $5 million and denied being

obligated to pay more, whereupon Mark Andy filed this suit against Hartford in a Missouri state court, seeking reformation of the insurance contract. Mark Andy also sought damages for breach of contract, estoppel, and negligence. Hartford removed the action to the District Court on the basis of diversity jurisdiction, and brought a third-party complaint against Lockton for indemnification and negligence.[5]

The case proceeded to a six-week jury trial. In response to special interrogatories submitted to the jury pursuant to Federal Rule of Civil Procedure 49(a), the jury made the following findings:

-- Hartford intended to provide $25 million in flood insurance for the Chesterfield Valley property when it made its quote to Lockton on Match 24, 1993.

-- Lockton intended that Hartford would provide $25 million in flood insurance for the Chesterfield Valley property, and Lockton acted as Hartford's agent, when Lockton (a) made the presentation of its insurance proposal to Mark Andy on March 25, 1993, (b) issued the property insurance binder, and (c) delivered to Mark Andy the Hartford property insurance policy.

-- When Lockton presented the insurance proposal to Mark Andy on March 25, 1993, Lockton represented to Mark Andy, orally or in writing, that Hartford would provide $25 million in flood insurance for the Chesterfield property; and Mark Andy reasonably relied upon this representation in not obtaining other flood insurance for a total amount of $25 million.

---

[5]Lockton's errors-and-omissions insurance carrier lent funds to Mark Andy to compensate for the loss. Mark Andy has no obligation to pay this money back unless it recovers in the instant lawsuit against Hartford.

-- When Lockton issued the binders, Lockton thereby represented to Mark Andy that Hartford would provide $25 million in flood insurance for the Chesterfield property; and Mark Andy reasonably relied upon this representation in not obtaining other flood insurance for a total amount of $25 million.

The jury further found that as a result of the July 1993 flood, Mark Andy sustained property damage to its Chesterfield Valley premises in the amount of $23,978,000 and business-interruption damages in the amount of $6,302,000.

The District Court issued findings of fact, consistent with the jury's, and conclusions of law and reformed the contract to provide for $25 million in flood coverage. The District Court eventually entered judgment in Mark Andy's favor for $20 million (taking into account the $5 million Hartford already paid Mark Andy, and the business-interruption losses up to the extent of the flood-loss limit as reformed) plus prejudgment interest. The District Court denied Mark Andy's motion for judgment as a matter of law, and Mark Andy's request for an additional award to cover the full amount of business-interruption losses found by the jury. Finally, the District Court dismissed Hartford's third-party claim against Lockton. Hartford filed the instant appeal, and Mark Andy cross-appealed.

II.

Hartford argues that the District Court erred in reforming the contract. Under Missouri law, reformation of a written agreement is "an extraordinary equitable remedy that should be granted with great caution and only in clear cases of fraud or mistake." Secura Ins. Co. v. J. R. Saunders, No. 99-2595, slip op. at 2 (8th Cir. Sept. 18, 2000). Reformation is appropriate if the parties have entered a definite and explicit agreement about which both parties had the same understanding, but by mutual mistake concerning a material provision, the written contract fails to express their agreement. "Thus the nature of the mistake and whether there was a prior agreement

-8-

are the primary factual issues in determining whether reformation is appropriate." Kopff v. Economy Radiator Serv., 838 S.W.2d 449, 452 (Mo. App. 1992).

Hartford first challenges the finding that Lockton was acting as Hartford's agent when it presented Mark Andy with the competing insurance proposals. Hartford argues that as a matter of law, Lockton was Mark Andy's agent at this point, and not Hartford's. Lockton's actions all objectively communicated that Hartford was offering $25 million of flood coverage. Thus if Lockton represented Hartford, then Mark Andy and Hartford, through Lockton, had an agreement, with objective manifestations of intent, for $25 million in flood coverage. The contract could be reformed to conform to that objective manifestation of intent. But if Lockton acted as Mark Andy's agent in presenting the proposals, then Hartford could not be bound by Lockton's actions.

Hartford concedes there might have been a need for some fact-finding. However, once the basic facts were established, Hartford argues, it was error to allow the jury to conclude that Lockton was Hartford's agent for purposes of the transaction at issue. Hartford then argues that once it is established that Lockton was not its agent, reformation is not possible, because Hartford itself never agreed to, or objectively communicated an offer for, flood coverage of $25 million.

Mark Andy responds that Lockton's agency was a question of fact that was properly submitted to the jury. It argues that the jury's factual finding must be upheld because it was supported by substantial evidence, and the Court's factual finding on the same subject must be upheld because it is not clearly erroneous. Finally, Mark Andy contends that Hartford waived its right to challenge this finding, because it did not object to the Court's instructions and special interrogatories as required by Federal Rule of Civil Procedure 51.

A.

We agree with Hartford that the Court erred in submitting the question of Lockton's agency to the jury, and that the Court erred in its legal conclusions based on that fact-finding. There was a need for some fact-finding. The agency status of a broker such as Lockton involves questions of fact as to what conduct occurred. The facts here were that Lockton had agency agreements with both Mark Andy and Hartford, and that Lockton was searching to fulfill Mark Andy's insurance needs among several insurance companies. Given these facts, the question of whether Lockton was Hartford's agent when it presented Hartford's quote to Mark Andy should have been determined as a matter of law.

Under Missouri law, when a broker, such as Lockton, acts on behalf of an insured to shop around for insurance among multiple insurance companies, the broker is the agent of the insured. See Secura Ins. Co., slip op. at 3; Electro Battery Mfg. Co. v. Commercial Union Ins. Co., 762 F. Supp. 844, 848 (E.D. Mo. 1991); Lampkin v. Kelly, 771 S.W.2d 953, 954 (Mo. App. 1989). Any mistakes made by the broker are attributable to its principal, the insured, and not to the insurance company. This is true even when there is an agency agreement between the broker and a particular insurance company. Electro Battery Mfg. Co., 762 F. Supp. at 849. The fact that Lockton was permitted to issue binders for Hartford does not necessarily render Lockton Hartford's agent as opposed to Mark Andy's. See Secura Ins. Co., slip op. at 5. Furthermore, the fact that Lockton previously obtained coverage for the property in question through a different insurer weighs against concluding that it was Hartford's agent on the Mark Andy account. See id.

There are special circumstances that allow a broker to be an agent for both the insured and the insurer when the broker is procuring insurance. If a broker is acting under a directive from the insured to obtain insurance from a particular insurance company, then the broker can be considered an agent for the insurance company.

-10-

Schimmel Fur Co. v. American Indem. Co., 440 S.W.2d 932, 938 (Mo. 1969). This exception does not help Mark Andy. Lockton sought and received bids from multiple insurers, and aided Mark Andy in weighing them to select the best possible bid.

Therefore, the contract could not have been reformed on the basis of any objective manifestation of intent by Lockton, because Lockton was Mark Andy's agent at the time the contract was formed. Mark Andy's argument that Hartford waived this argument by not objecting to the special interrogatories and instructions at trial does not trouble us. Hartford did move for judgment as a matter of law, raising a sufficiency-of-the-proof claim. This was adequate to preserve this issue for appeal.

B.

The only other basis for reformation would be an objective manifestation of intent on Hartford's part, through its own employees, to offer $25 million in flood coverage for the property in question. Without an objective manifestation of intent at the time the contract was formed, it cannot be said that the parties had a definite and explicit agreement for $25 million in flood insurance. See Continental Ins. Co. v. Cotten, 427 F.2d 48, 53 (9th Cir. 1970) ("Without an objective manifestation of mutual intent . . . there is no mutual agreement that a reformation could express.")

The jury found that when Hartford gave its insurance quote to Lockton, Hartford intended to provide $25 million in flood insurance. We interpret this finding to mean that Hartford subjectively intended to provide $25 million in flood coverage. This finding is supported by the record. Mr. Settle, the Hartford underwriter, told IRI to quote him the "full limits" for the property insurance. Settle's communication with Hartford Specialty indicates that he believed (wrongly) that he had received the "full limits" from IRI.

However, Mr. Settle's subjective intent is legally irrelevant. The important inquiry is what Hartford communicated to Lockton (and therefore to Mark Andy), not what Mr. Settle thought. In our opinion, the evidence does not support a finding that Hartford objectively manifested an intent to offer $25 million in flood coverage. The only written offer ever communicated to Lockton was for $5 million in flood coverage. Hartford never orally communicated that it was offering $25 million. The policy itself unambiguously stated that the flood coverage was for $5 million.

Nevertheless, Mark Andy argues that Hartford objectively manifested an intent to offer $25 million in several ways. First, the cover letter of Hartford's quote to Lockton stated, as set forth above, that the quote was "competitively priced based upon the exposures and information provided." At trial, Mark Andy introduced some evidence intended to show that the industry custom would have been for Hartford to explain clearly in its cover letter if its offer differed in any material way from Lockton's submission. Mark Andy also argues that the actual premium Hartford charged for $5 million is not so different from what Hartford would have charged for $25 million as to put Mark Andy or Lockton on notice that there was a discrepancy. Finally, Mark Andy argues that the insurance binders Lockton gave to both Mark Andy and Hartford provided for $25 million in flood coverage.

The most persuasive argument in support of the verdict and judgment is based on Hartford's cover letter to Lockton. Typical of Mark Andy's and Lockton's evidence of industry custom is the following:

> Q. "Competitively priced, based on the exposures and information provided." Would you explain to the members of jury what that language means to someone in the insurance business in a relationship between the company and a [sic] agent?

-12-

A. Yes. It is in a form, a promise that what is being quoted, that is to say that the amount of premium being asked for is the amount the company wants to provide, in this case $25 million in flood coverage at Chesterfield.

Exposure means exposure to loss, and that's a common term that underwriters and agents use every day. . . . It's therefore used to define the amount of insurance, the kind of insurance, on what - building or business personal property - and where.

Appendix of Mark Andy at 388-89. See also, e.g., Appendix of Lockton at 137, 257.

In order to sustain the jury verdict, this testimony would have to be read as indicating that the language of the cover letter, in and of itself, and without regard to the enclosures, amounted to an objective manifestation of intent on the part of Hartford to offer $25 million in flood-loss coverage on the Chesterfield Valley location. We think it important to note that the plaintiff's evidence on this issue does not address the cover letter as a whole. It is limited to the effect of only one paragraph. Nothing is said about the next paragraph, which expressly refers to the attached "itemized breakdown of coverages and premiums applicable." If one looks at this itemized breakdown, it is impossible to avoid the clear statement that only $5 million of flood coverage is being offered. And surely any reasonable insurance professional, for example, Lockton in the present case, would have to look at the attachments, if only for the purpose of determining what premium was being charged. Here the cover letter itself cautions the reader to examine the underlying quote, and the quote itself is unambiguous as to the amount of coverage. The coverage offered was $5 million, not $25 million. If in fact there is an industry expectation that only one paragraph of the cover letter would be read, and that an expert offeree could safely ignore the attached pages in their entirety, this is an expectation that the law is not prepared to recognize as reasonable. Missouri law imposes an affirmative duty on an insured to examine its

policy promptly to ensure it contains the terms of coverage desired or agreed upon. Jenkad Enters., Inc. v. Transportation Ins. Co., 18 S.W. 3d 34, 37 (Mo. App. 2000) (insurance policy could not be reformed on the ground of mutual mistake where insured did not notice that policy did not include all the coverage applied for).

We do not believe that the amount of the premium constituted an objective manifestation of intent on Hartford's part to offer $25 million in flood coverage. As noted above, in 1991, Hartford quoted property insurance coverage to Mark Andy, including $25 million in flood coverage, at a premium of $22,400. In the instant case, the premium quoted for the property insurance was $24,500. Hartford offered evidence that, had it offered $25 million in flood coverage in 1993, the premium would have been $10,000 more. Given that the Chesterfield property was classified as a higher risk property by 1993, we do not believe that the 1993 premium was a clear statement that Hartford was offering $25 million in flood coverage, at least not a statement clear enough to justify ignoring the explicit written statement that only $5 million was being offered.

Finally, the binders that Lockton issued to Mark Andy and to Hartford that provided for $25 million in flood coverage are not relevant. The explicit agreement between Mark Andy and Hartford was reached on March 25, 1993, when Lockton communicated to Hartford Mark Andy's acceptance of the Hartford quote. The binders came later. Hartford's failure to notice the error in the binders is not a ground for contract reformation. When the loss occurred, the binders had expired, and the policy itself was limited to $5 million.

In sum, there is no reasonable basis for concluding that Hartford objectively communicated an offer for $25 million in flood coverage for the Chesterfield Valley property. The only unambiguous statement of its proposed coverage was the actual quote, which clearly provided for $5 million in coverage. This is not a true mutual-mistake case in which contract-reformation is appropriate. Cf. State Farm Mut. Auto.

-14-

Ins. v. McGuire, 905 S.W. 2d 150, 153 (Mo. App. 1995) (insured and automobile insurer agreed that a vehicle would be covered by a policy for Missouri residents with a vehicle titled in Missouri as was the case; mistake by insurer in issuing a Kansas policy did not entitle insured to the expanded benefits under the Kansas policy, and contract was appropriately reformed to reflect actual agreement of the parties); Kopff v. Economy Radiator Serv., 838 S.W.2d at 449 (reformation of insurance contract was appropriate to reflect the agreement between the parties where the coverage limits shown in the policy differed from the agreement due to a clerical error in transposing two covered properties on the brokerage sheet). For these reasons, the District Court erred in reforming the contract.

III.

A.

On cross-appeal, Mark Andy argues that the District Court erred in failing to award Mark Andy the full amount of its business-interruption damages ($6,302,000) and in refusing to allow it to conform its pleadings to the evidence at trial that would support this claim. We believe this argument has merit. At trial, Hartford itself presented evidence that the recovery of business-interruption losses was not capped by the property-damage flood-loss limit at the Chesterfield facility. Rather, business-interruption losses could be claimed under a blanket insurance provision to a limit of $38,500,000 (Mark Andy's Appendix at 221-22; 250-51; 522, 530b).

Mark Andy's amended complaint sought the full recovery of business-interruption losses. Although Mark Andy sought these damages under the flood-loss provision (which it maintained should be reformed to $25 million), we do not believe this circumstance defeats its entitlement to these damages. Hartford stresses that the issue of recovery of business-interruption losses came before the Court in the form of a motion by Mark Andy to amend its pleadings to conform to the proof. The District

-15-

Court denied this motion, and, as Hartford rightly emphasizes, such a decision is reviewable only for abuse of discretion. In the instant case, we believe that sustaining the decision would work a manifest injustice, and that it should be reversed even under the exacting standard of review that we must apply. Hartford's own witnesses introduced the subject. Hartford itself conceded that business-interruption losses were covered by the policy under the general limit of liability, quite apart from the sublimit on flood losses. In these circumstances, we perceive no unfairness at all to Hartford in allowing Mark Andy to recover for business-interruption losses. See Fed. R. Civ. P. 54(c) ("Every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings").

B.

In its cross-appeal, Mark Andy also argues that the District Court erred in not entering judgment as a matter of law on its estoppel claim. Mark Andy's theory is that Lockton issued binders on Hartford's behalf for $25 million in flood insurance, and Mark Andy reasonably relied on these binders. Mark Andy argues that it is the duty of the insurer to issue a permanent policy in accordance with the terms of the binders. This claim fails. Under Missouri law, estoppel is available only to someone who was actually misled or deceived by the act in question, and estoppel is not available to one who knew or had the same means of knowledge as the other as to the truth. Missouri Ins. Guar. Ass'n v. Wal-Mart, 811 S.W. 2d 28, 34 (Mo. App. 1991). Mark Andy offers no evidence that it was actually misled by the binders, or even read them. See Secura Ins. Co., slip op. at 6 (where the insured never read the insurance application, the application could not be relied upon to estop one to deny he was the insurance company's agent). All of Mark Andy's evidence that it was misled relates to the period when Lockton initially communicated the Hartford offer.

Moreover, the binders had expired by the time of the flood, and Mark Andy had in its possession the actual policy, which stated the flood coverage at $5 million. Lockton, as Mark Andy's agent, should have reviewed that policy, and communicated any problems with it to Mark Andy. See Jenkad Enters., Inc., 18 S.W. 3d at 3 (given its modern use, a binder can not be the basis for reforming a final written policy to conform with the terms of the binder).

IV.

The District Court erred in reforming the insurance contract to $25 million in flood coverage. Hartford was obligated to pay $5 million in flood damage to Mark Andy, which it did. The District Court also erred in not awarding Mark Andy $6,302,000 in business-interruption damages. Accordingly, the judgment of the District Court is reversed, and the case is remanded to the District Court with instructions to enter judgment in favor of Mark Andy, Inc., and against Hartford Fire Insurance Co. in the amount of $6,302,000 plus prejudgment interest. Lastly, we affirm the dismissal of Hartford's third-party complaint against Lockton.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.