Charles A. VARNAL, II, Appellant,

v.

Joe L. WEATHERS and Allstate Insurance Company, a Corporation, Respondents.

No. WD 31312.

Missouri Court of Appeals, Western District.

June 16, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 24, 1981.

Application to Transfer Denied Sept. 8, 1981.

Elwyn L. Cady, Independence, for appellant.

Gerald B. Beeny, Kansas City, for Weathers.

George S. Miller, Kansas City, for Allstate.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE JJ.

SHANGLER, Judge.

The plaintiff seeks recovery under the no-fault and uninsured motorist coverages of an Oregon automobile insurance policy.

Count I claims damages against the defendant Weathers for a rear-end collision. Count II claims against defendant Allstate for the liability of defendant Weathers under the uninsured motorist coverage of the policy issued by Allstate to the plaintiff. Count III claims medical and hospital expenses and income continuation loss against defendant Allstate under the no-fault coverage of the policy. The jury returned verdicts for the defendants on Count I and Count II. The court found there was no substantial evidence to support Count III and directed a verdict for the defendant Allstate on that cause of action. The plaintiff appeals from *the judgment.*[1]

Count II pleads, in addition to the uninsured motorist recovery, the statutory penalty and attorney fee for nonpayment of the insurance policy benefit and exemplary damages for the breach by Allstate of a fiduciary duty to the insured plaintiff of "utmost good faith and fair dealing" under the policy. The court struck the allegation of the petition for the statutory penalty, attorney fee and exemplary damage. On this appeal, the plaintiff Varnal contends that action was error. If we assume that the recitation of contention in the brief constitutes a point relied on within the sense of Rule 84.04(d) [a doubtful hypothesis],[2] nevertheless the merits do not favor the contention.

The motion for new trial raises no question of error as to the judgment entered for the defendant Weathers on Count I, therefore, the issue of the liability of uninsured motorist Weathers to the insured Varnal litigated in Count I has been finally determined against the plaintiff Varnal. *Fallert Tool & Engineering Company v. McLain,* 579 S.W.2d 751, 756[5, 6] (Mo.App. 1979). The contention that the court erred by deletion of the allegations of the breach of an implied covenant of good faith and fair dealing—and the punitive ad damnum for $1.2 million—under the uninsured motorist claim against Allstate in Count II, therefore, loses substance because no duty ever accrued to the insured Varnal from the insurer Allstate for payment of an adjudicated liability of an uninsured motorist. The essential claim the plaintiff seeks to vindicate on the point of appeal misconceives altogether the relationship of an insured and an insurer, and specifically the posture between them under an uninsured motorist coverage. The cause of action in tort for breach of the obligation of fair dealing presupposes an insurer and insured in a subsistent fiduciary relationship. The uninsured motorist provision of a policy does not place them in that position, nor does the mere relationship of insurer and insured import an obligation of trust.

1. We assume for the purposes of this review that the appellant perfected appeal as to all three causes of action and as to both defendants-respondents. It does not affect disposition, as becomes manifest. But see: *Charles v. Ryan,* 618 S.W.2d 220 (Mo.App.1981) and *Donnell v. Vigus Quarries, Inc.,* 489 S.W.2d 223, 224[1] (Mo.App.1972).

2. The text of the *point* is:
 The Court erred in striking portions of the petition going to the tort of bad faith since the pleading alleged a fiduciary relationship between Varnal [insured] and Allstate [insurer], the avowed policy to resist claims admittedly just and fair, and Allstate's position that it controlled whether or not Varnal could bring suit against Weathers [uninsured motorist].
 The argument in the brief consequent to that point—six brief sentences within two spare and stark paragraphs—does not clarify the point. The argument does not relate to the pleadings nor to any policy provision upon which the

claims rest. The action of the court was premised on the principle that no penalty or attorney fee [under § 375.420] or other duty arose to the plaintiff Varnal under the uninsured motorist provision *ex contractu* until the liability of uninsured motorist Weathers to insured Varnal was adjudicated. Nor did Count II plead a cause of action in tort against Allstate for a breach of a fiduciary relationship between the insured and insurer. That rests soundly on *Craig v. Iowa Kemper Mutual Insurance Company,* 565 S.W.2d 716 (Mo.App. 1978). The citation of that authority by the appellant to sustain contention that the statutory penalties and other contractual duty arises to an insured from an insurer under the uninsured motorist coverage *prior* to determination of a liability to the insured from the uninsured motorist, therefore, is entirely misplaced. The point on appeal impugns only the deletion of the allegations for the tort remedy.

*Craig v. Iowa Kemper Mutual Insurance Company*, 565 S.W.2d 716, 723[6] (Mo.App. 1978). Rather, the duty to deal in good faith—as our law now stands—does not arise from an insurance contract at all but from the nature of the relationship. *State of Missouri ex rel. State Farm Mutual Automobile Insurance Company v. The Honorable James H. Keet, Jr.*, 601 S.W.2d 669, 671[2, 3] (Mo.App.1980); *Zumwalt v. Utilities Ins. Co.*, 360 Mo. 362, 228 S.W.2d 750, 753[2] (1950). Our law considers, for instance, that where an insurer reposes upon the insured the power as of an attorney to negotiate the claim of liability brought against the insured—an inherent fiduciary relationship arises which the insurer must discharge with the utmost good faith. *Zumwalt v. Utilities Ins. Co.*, supra, l.c. 753[2]. The allegations of Count II do not plead, in terms or effect, a fiduciary relationship or a tort for the breach of any duty owed by Allstate to Varnal on that theory, and the deletion of the ad damnum for exemplary damages was proper.

■ The plaintiff contends also that the direction of verdict against Count III was error because the evidence made a prima facie proof for recovery under the medical expense and income replacement no-fault coverage of the Allstate policy. That coverage, a benefit under the local law of the Oregon policy, declares:

Coverage VA—Automobile Personal Injury Protection

Allstate will provide in accordance with Chapter 523 of Oregon Laws 1971, the following benefits for loss and expense occurred because of bodily injury caused by accident and arising out of the ownership, maintenance or use of an automobile:

(a) Medical and hospital benefits to or on behalf of each injured person;

(b) Income continuation to or on behalf of each injured person who at the time of the accident was usually engaged in a remunerative occupation. . . .

The court directed Count III against the plaintiff on the determination that a jury

award would rest on only the "wildest speculation."

The claim for the medical and hospital expense benefit is readily dispatched. The plaintiff concedes that Allstate reimbursed expenses for treatment, but not to the full amount submitted. There were no medical bills in evidence, although the physician who administered the treatment testified to an outstanding bill. That physician, however, had treated the plaintiff for a prior injury and could not say as to which course of treatment the outstanding charge was related. There was no sufficient prima facie proof to submit that component of the no-fault recovery.

■ To prove the income continuation benefit of the no-fault coverage, the plaintiff gave evidence of various personal employments as well as a contractual entrepreneurship in educational materials. There was evidence that the plaintiff had established a system of sales personnel throughout the several states for that purpose. The evidence of that, and other, gainful activity was not at all defined nor was the chronology of earnings certain. The income continuation benefit is payable under the policy term to *each injured person who at the time of the accident was usually engaged in a remunerative occupation.* The trial court determined that the evidence was not probative of that benefit because the plaintiff did not prove that he was engaged in a *remunerative occupation at the time of the accident*, as the literal policy term expresses. That provision of the insurance policy is governed by Oregon law. Our review is hampered not only by the effusive but mingled evidence on that issue, but also because the contract agreement exhibit which bears on that proof is not part of this record—and so unavailable to clarify the oral rendition of their contents. We are hindered also because the plaintiff does not aid us with the text of the Oregon statute nor any decision of an Oregon court as to the sense of the no-fault enactment. The single case plaintiff cites, *Shadboldt v. Farmers Insurance Exchange*, 275 Or. 407, 551 P.2d 478 (1976), merely gives effect to

the Oregon—and conventional rule—that an insurance policy ambiguity favors the insured. The decision discusses, not no-fault implications, but the question whether a nonowned automobile was covered as an insured automobile within the language of the policy, and so does not bear on contention.

The date of the collision between Varnal and Weathers was May 10, 1975. The plaintiff Varnal gave evidence of three different [concurrent?] occupations—the composition of educational contracts, a manager with the Collier Service for the sale of educational materials, and a business equipment sales project. At least two of these occupations, however, were incipient and not operative. The other one, from what the evidence reasonably implies, was no longer productive. In any event, the plaintiff acknowledged that he was not "regularly employed in '75 or '74" by anyone as a source of earnings. Rather, by his own testimony his automobile, indispensible to his sales work, was in storage for repair in year 1974 and—apparently—up to the time of collision.

The court considered this evidence not substantial proof of a *remunerative occupation at the time of the accident* within the no-fault policy prescription for income continuation benefits. The contention for *income continuation* recovery rests on the premise that the policy language allows benefits for "an expectation of income" as well as for the loss of earnings from a subsistent occupation. In the absence of any precedent or expression of Oregon public policy to support that view, we concur with the trial court that the policy language allows an insured no reasonable expectation of benefits for loss from an occupation not practiced and from money not payable at the time of the accident. In any event, the response of the plaintiff to inquiry by his counsel as to the "dollars and cents expectation that would be in full bloom in 1975" from the Collier Service arrangement [the only one of the three occupations even nearly operative at the time of the accident] was that the contract "was not even in opera-

tion" then, so that he "didn't know what to expect from it really." The point is denied.

 The final point contends:
The Court erred in excluding expert testimony of a treating physician on the issue of pain and mental anguish from the time of injury to the date of trial since such testimony has long been entirely proper in Missouri and prejudice occurs by its exclusion, the objections of "speculative and conjectural," "not proper subject of expert testimony," and the ground of rejection as "being too broad" are contrary to Missouri jurisprudence.

The argument of the point consists of nine lines, devoid of reference to the transcript, without rescription, resume or other description of the testimony. The witness is not identified, nor is the precise ruling to which the appellant objects. This presentation simply does not inform us what the appellant means nor what he expects of us. The single authority cited, *Reed v. Reed*, 101 Mo.App. 176, 70 S.W. 505 (1902)—a divorce case—holds that the exclusion of competent testimony is presumed to be error and prejudicial when not shown to be harmless. We may assume the soundness of that abstract principle, but the rules of procedure require that the brief of an appellant give notice to the respondent the precise matter in contention and give opportunity to the court of the means of an informed review. *Thummel v. King*, 570 S.W.2d 679, 685[5] (Mo. banc 1978). Point III of the brief violates Rules 84.04(d) and (e) and does not engage our review.

The judgment is affirmed.

All concur.