**In re Petition of Barry W. BELLINO for Review of the State Board of Law Examiners Decision.**

No. C8–91–632.

Supreme Court of Minnesota.

Dec. 27, 1991.

Barry W. Bellino, pro se.

Margaret Fuller Corneille, Director, State Bd. of Law Examiners, and Hubert H. Humphrey, III, Atty. Gen., Sarah G. Mulligan, Sp. Asst. Atty. Gen., St. Paul, for respondent.

PER CURIAM.

This matter is before this court upon the applicant's petition to review the recommendation of the Minnesota Board of Law Examiners that he not be admitted to the bar because he does not possess the requisite character and fitness. We affirm.

Applicant Barry W. Bellino graduated from California Western School of Law in 1985 and in July of 1985 took and failed the Minnesota bar examination. In February 1986 he passed the South Carolina bar examination and, apparently, was admitted to practice there. In the autumn of that same year Bellino, a reserve officer in the United States Marine Corps, returned to active duty and for about two years served as a legal assistance officer and defense counsel for the Marine Corps Air Station in South Carolina.

On September 23, 1988, following allegations by three of Bellino's female clients that he had sexually assaulted them, the Marine Corps charged Bellino with conduct unbecoming an officer. In December of 1988 Bellino pled guilty to one specification of orally communicating indecent language, three specifications of indecent assault, and one specification of wrongfully committing an indecent act by having sexual intercourse with a client. He stated under oath that he understood the meaning and effect of pleading guilty, the rights of an accused including the right to counsel, and that the maximum punishment for his behavior was 20½ years in prison, dishonorable discharge, forfeiture of pay, and a fine. Nevertheless, Bellino acknowledged under oath that his pleas were made knowingly and voluntarily and that the allegations of fact underlying each of the charges were correct. The court martial sentenced him to 24 months in prison and he was dismissed from the military. His petition for review by the Court of Military Appeals was denied as was his petition for reconsideration.

In February of 1988, about seven months before initiation of the charges of conduct unbecoming an officer, Bellino applied for admission to the Minnesota bar on the basis of his having received a score of 145 or more on the multi-state portion of the South Carolina bar examination. While the Minnesota Board of Law Examiners was investigating Bellino's character and fitness, a Marine Corps major informed the Board on November 14, 1988 that Bellino had been charged with sexually assaulting his clients. The major later informed the Board of Bellino's guilty plea to all charges.

A few weeks after his guilty plea, Bellino asked the Board to suspend further action on his application and to hold it temporarily in abeyance. The request contained no mention of the criminal charges, his guilty plea, or his incarceration. The Board denied his request to suspend the application and reminded him of his continuing obligation to update all information provided in the application.

On July 21, 1989 the Board denied Bellino's application on grounds of a lack of character and fitness, citing his guilty pleas, conviction, incarceration, and the failure to inform the Board of either the charges or the action taken against him as a result of those charges. Bellino then requested a formal hearing and in that request mentioned his membership in the bar of another state but said that he could not discuss his status subject to the contempt powers of the supreme court. Notwithstanding the Board's request for clarification of his cryptic statement, Bellino never reported to the Board that the South Carolina Supreme Court had on August 25, 1989 temporarily suspended his license to practice law until further notice. Although it is true, as Bellino contends, that South Carolina treats a petition for lawyer discipline as a private matter during its penden-

cy, the subject of the disciplinary proceedings may request release of the information. Of course, once a lawyer is suspended, the matter is private no longer.

Following a hearing during which Bellino invoked his fifth amendment privilege against self-incrimination in response to any question concerning the charges which had been brought before the military tribunal, the Board concluded by written decision that Bellino had engaged in sexual misconduct with clients, that he had knowingly pled guilty to the charges against him, and that he had failed to disclose required information to the Board of Law Examiners before whom his application for admission was then pending. The Board also found that nothing in the record evinced Bellino's reformation or rehabilitation from his misconduct and that the record demonstrated significant deficiencies in honesty, trustworthiness, and reliability within the meaning of the character and fitness standards adopted by the Board and this court. The Board denied Bellino's application for admission to the bar of Minnesota, commenting in an attached memorandum that the evidence was not only adequate to justify denial of the application but that it compelled denial.

▇▇▇ It is well established that an applicant for admission to practice law in the State of Minnesota bears the burden of establishing good character and fitness to the satisfaction of the Board of Law Examiners. *E.g., In re Petition of Brown,* 467 N.W.2d 622, 624 (Minn.1991); Minnesota Rules of the Supreme Court for Admission to the Bar, Rule IIA(2) (1991). The character and fitness standards adopted by the Board list factors to be considered in assigning weight and significance to prior conduct. *See In re Zbiegien,* 433 N.W.2d 871, 875 (Minn.1988) (factors listed); *see also In re Petition of Brown,* 467 N.W.2d at 624. At no time during the hearing did Bellino ever attempt to satisfy his burden of establishing good moral character. His only response to questions concerning the charges was invocation of his fifth amendment rights. Certainly, Bellino was entitled to exercise his constitutional rights,

but the declination to respond to questions can hardly be said to have advanced his burden of establishing good moral character and fitness in the face of the uncontroverted evidence of his misconduct. Moreover, his argument that he need not respond to questions concerning his misconduct rests on the contention that the military requires higher moral standards than does society generally and that there is no civilian counterpart for the charges against him. Although it is probably accurate to say that only the military couches a charge of misconduct punishable by imprisonment in terms of "conduct unbecoming an officer and a gentleman," the admitted conduct underlying most of those charges would support a conviction of criminal sexual conduct pursuant to the Minnesota Criminal Code had they been committed by a civilian. Regardless, however, whether it constitutes criminal misconduct, Bellino's admitted sexual assaults of clients do not constitute evidence of good character.

Bellino also complains that the procedural protections afforded defendants in judicial proceedings are relaxed in military proceedings, but it is apparent from the record before the Board that the presiding military judge repeatedly asked Bellino if he understood the charges, if he assented to the evidence-gathering process, whether he was represented by counsel, and told him that he had the opportunity to confront his accusers before Bellino, who was represented by counsel, asserted that he knowingly and voluntarily pled guilty to the charges.

▇▇▇ Bellino's third contention of a lack of due process was grounded in a complaint that the Board did not inform him that his honesty, trustworthiness, and reliability were at issue. "Good character" is defined as "traits that are relevant to and have a rational connection with the present fitness or capacity of an applicant to practice law." Definition 4, Minnesota Rules of the Supreme Court for Admission to the Bar (1991). Inasmuch as it was Bellino's character and fitness which were at issue, it is to us incomprehensible that any applicant to the bar could consider honesty, trustwor-

**510**

thiness, and reliability as traits irrelevant to the applicant's fitness to practice law.

■ Finally, Bellino claims that he has been punished sufficiently for his "indiscretions" because his application to the Minnesota bar has been delayed for over three years. The delay in processing Bellino's application, however, is the result, almost entirely, of Bellino's own actions. The Board has been required to ferret out every bit of information concerning Bellino's misconduct and the consequences of that misconduct without any assistance from Bellino. When the Board informed Bellino that he could demand a hearing, he demanded the hearing but on four separate occasions during the nine months following his demand, he requested and was granted continuances. After the hearing was held, Bellino made a flurry of motions—at least eight, two of which were for extensions of time in which to file his brief. Bellino does not deny the events which resulted in his imprisonment and his dismissal from the United States Marine Corps and his suspension from the practice of law in South Carolina; he simply contends that delaying his admission to practice in Minnesota for three years is punishment enough. But punishment is not the issue. The question before us is whether Bellino has established his good character and fitness to practice law as measured by the standards adopted by the Board of Law Examiners, and we concur with the Board's determination that he has not done so. Character and fitness are not established simply by lapse of time since the commission of actions which demonstrate a lack of the kind of moral character and fitness this state requires of its lawyers.

Applicant's petition for admission to the bar of this state is denied.