# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2527

_____

| | | |
|---|---|---|
| Dairy Farmers of America, Inc., | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Travelers Insurance Company, | * | |
| | * | |
| Defendant/Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Cabool Transport, Inc., | * | |
| | * | |
| Third Party Plaintiff, | * | |
| _____ | * | |
| | * | |
| Cabool Transport, Inc., | * | |
| | * | |
| Fourth Party Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| National Union Fire Insurance | * | |
| Company, | * | |
| | * | |
| Fourth Party Defendant. | * | |

_____

Submitted:  December 14, 2001

Filed: June 3, 2002
_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and RILEY, Circuit Judges.
_____

RILEY, Circuit Judge.

Dairy Farmers of America, Inc. (DFA) filed a declaratory judgment action against Travelers Insurance Company (Travelers) seeking a declaration that the liability insurance policy issued by Travelers was excess over a primary policy and an umbrella policy held by Cabool Transport, Inc. and Cabool Leasing (collectively Cabool), with whom DFA had an indemnification agreement.  Cabool's primary policy was also issued by Travelers.  Cabool's umbrella policy was issued by National Union Fire Insurance Company (National Union).  DFA alleged multiple tort claims against Travelers for applying DFA's $1 million policy to settle a personal injury claim before exhausting coverage under Cabool's $5 million National Union umbrella policy.  Alternatively, DFA sought equitable reformation of both DFA's and Cabool's policies with Travelers.

DFA and Travelers filed cross motions for summary judgment.  The district court granted summary judgment in favor of Travelers. DFA appeals. We reverse in part, affirm in part, and remand.

## I. BACKGROUND

### A. Factual History

DFA is a dairy cooperative which contracted with Cabool to ship its milk and dairy products to customers nationwide. The contract required Cabool to indemnify DFA for claims arising out of personal injury or property damage sustained by reason of an act or omission of Cabool or its employees. DFA and Cabool each obtained a $1 million liability policy through Travelers using the same independent broker. Cabool also obtained a $5 million umbrella policy from National Union.

DFA and Cabool intended that Cabool's primary and excess policies would be exhausted before any claim could trigger coverage under DFA's policy. However, the submissions prepared by the broker did not specify this intention. DFA offered evidence that the insurance broker understood the DFA and Cabool business relationship and their transportation agreement containing the indemnity provision. Although the broker believed Travelers also understood the DFA/Cabool relationship, Travelers classified DFA as a trucker "in the business of providing transportation for hire," disqualifying Cabool's indemnity as an "insured contract" in both the Cabool/Travelers and Cabool/National Union policies. In response to the broker's submissions, Travelers prepared insurance quotations which DFA and Cabool accepted.

Travelers's liability policy issued to DFA had a $250,000 deductible. As required by Travelers, DFA deposited $250,000 into a specified insurance reserve account to cover the deductible.

In February 1996, while transporting goods under Cabool's contract with DFA, a Cabool driver was involved in a trucking accident. The Cabool truck hit a car driven by Deborah Ward (Ward), causing her severe injuries. Ward sued the driver, Cabool, DFA, and State Farm Insurance Company for $25 million. Travelers agreed

to defend the driver, Cabool, and DFA and retained the same defense counsel for each insured.

In September 1998, Travelers informed DFA that Travelers was applying both the DFA and the Cabool policies to the Ward claim. Travelers settled the Ward claim for $4.4 million in February 1999. Travelers applied the $1 million policy limits from both the DFA policy and the Cabool policy. Travelers deducted $250,000 from the DFA reserve account to cover DFA's deductible. National Union paid the remaining $2.4 million from Cabool's umbrella policy.

### B. Procedural History

In June 1999 DFA brought a declaratory judgment action against Travelers alleging that Travelers had wrongly applied DFA's liability policy and had wrongly applied DFA's $250,000 deductible. DFA asserted multiple tort claims, including breach of fiduciary duty, conversion, negligent misrepresentation, fraudulent non-disclosure, and vexatious refusal. In the alternative, DFA sought equitable reformation of its policy and the Cabool policy with Travelers to reflect their intention and understanding that the DFA/Travelers policy covered claims only after Cabool's primary and excess policies were exhausted.

In November 1999 Travelers filed a third-party complaint against Cabool. Cabool moved to dismiss the third-party complaint. DFA did not object to Cabool's motion. In June 2000 the district court dismissed Travelers's third-party complaint against Cabool.

Both Travelers and DFA filed motions for summary judgment. The district court granted summary judgment in favor of Travelers. The district court framed the essential dispute as "whether [DFA's] policy offers solely excess coverage relative to both of Cabool's policies." The court then narrowed its inquiry to "whether DFA's policy is excess relative to Cabool's umbrella policy with National Union." After

-4-

reviewing the insurance policies, the district court found that National Union's policy is a "true excess" or umbrella policy; whereas, DFA's policy is primary in nature and excess only by virtue of an "Other Insurance" provision. Relying on Smith v. Wausau Underwriters Insurance Company, 977 S.W.2d 291, 293 (Mo. Ct. App. 1998), the district court held that a policy offering excess coverage only through an "other insurance" clause is not considered excess relative to an umbrella policy covering the same loss.

The district court did not determine whether Travelers had erred when, in defending DFA and Cabool, it considered DFA to be a "trucker engaged in the business of providing transportation for hire" and deemed its policy "co-primary" with Cabool's policy for purposes of the Ward personal injury claim.[1] The district court found this determination was unnecessary. According to the court, DFA was not prejudiced by any such error because the DFA policy was not excess relative to Cabool's umbrella policy.

Finding that DFA's policy was not excess to the umbrella policy and that DFA sustained no damages, the district court granted summary judgment on DFA's declaratory judgment, conversion, breach of fiduciary duty, and vexatious refusal claims. Because DFA did not resist summary judgment on its negligent misrepresentation and fraudulent non-disclosure claims, the court granted summary judgment on these claims as well.

The district court then considered and rejected DFA's claim for equitable reformation of the DFA policy. The court found the written DFA/Travelers and Cabool/Travelers insurance policies were unambiguous and DFA had an adequate

---

[1] In Travelers's brief in support of its motion for summary judgment, Travelers argued that because both DFA's and Cabool's liability policies had identical "other insurance" provisions, the provisions were mutually repugnant under Missouri law, thereby causing the policies to be co-primary.

remedy at law, namely a claim against Cabool based on the parties's indemnification agreement. Because the insurance policies had expired and DFA could pursue a direct claim against Cabool under the indemnification agreement, the district court found reformation was unnecessary.

DFA filed an amended motion for reconsideration of the court's order granting summary judgment. In the alternative, DFA sought leave to file an amended complaint adding Cabool as a party. Travelers resisted, and the district court denied the motion.

On appeal, DFA contends the district court (1) erred in granting summary judgment to Travelers on DFA's tort claims; (2) abused its discretion by refusing to reform the DFA policy; and (3) abused its discretion by refusing to permit DFA to amend its pleadings to add Cabool as a defendant.

## II.    DISCUSSION

We review a grant of summary judgment de novo, applying the same standard as the district court. Jeseritz v. Potter, 282 F.3d 542, 545 (8th Cir. 2002). When the evidence, viewed in a light most favorable to the non-moving party, demonstrates the existence of no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment shall be granted. See Fed. R. Civ. P. 56(c); Clark v. Kellogg Co., 205 F.3d 1079, 1082 (8th Cir. 2000).

### A.    Tort Claims

DFA contends the district court erred in granting summary judgment on its breach of fiduciary duty, negligent misrepresentation, fraudulent non-disclosure, and conversion claims. Travelers argues DFA's tort claims rest on the erroneous premise that the DFA policy is excess over the Cabool policy and the National Union umbrella policy, and fail as a matter of law for lack of proof of damages. Following our review of the record, we conclude the district court properly granted summary

judgment on DFA's conversion claim. Furthermore, because DFA did not resist summary judgment as to its negligent misrepresentation and fraudulent non-disclosure claims, the district court properly granted summary judgment on these claims. However, we do not agree with the district court's ruling that DFA's breach of fiduciary duty claim must fail as a matter of law.

### 1.      Breach of Fiduciary Duty

We must apply the law of Missouri, the forum state in this diversity action. Fogelbach v. Wal-Mart Stores, Inc., 270 F.3d 696, 698 (8th Cir. 2001). A claim for breach of fiduciary duty has four elements: (1) the existence of a fiduciary relationship between the parties, (2) a breach of that fiduciary duty, (3) causation, and (4) harm. Koger v. Hartford Life Ins. Co., 28 S.W.3d 405, 411 (Mo. Ct. App. 2000). A fiduciary is a person having a duty to "act primarily for the benefit of another in matters connected with his undertaking." See Restatement (Second) Agency § 13 cmt. a (1957); Restatement (Second) of Trusts § 2 cmt. b (1959). While Missouri has adopted no precise common-law definition, a "fiduciary relationship" is deemed to exist when "a special confidence [is] reposed in one who in equity and good conscience is bound to act in good faith, and with due regard to the interests of the one reposing the confidence." Vogel v. A.G. Edwards & Sons, Inc., 801 S.W.2d 746, 751 (Mo. Ct. App. 1990) (citations omitted).

As a general principle, no fiduciary duty exists between an insurer and its insured under Missouri law. Id. (citing A.G. Edwards & Sons, Inc. v. Drew, 978 S.W.2d 386, 394 (Mo. Ct. App. 1998)). However, Missouri courts have acknowledged that "[a] fiduciary relationship may arise as a matter of law by virtue of the parties' relationship, e.g. attorney-client, or it may arise as a result of the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." A.G. Edwards & Sons, Inc., 978 S.W.2d at 394 (quoting State Sec. Ins. Co. v. Frank B. Hall & Co., 630 N.E.2d 940, 945 (Ill. App. Ct. 1994)).

In Craig v. Iowa Kemper Mutual Insurance Company, 565 S.W.2d 716, 723 (Mo. Ct. App. 1978), the Missouri Court of Appeals explained:

> The fiduciary duty of an insurer for good faith rests on the reservation of exclusive right to contest or negotiate the claim of liability brought against the insured, and so withhold from the insured the right to settle without consent of the insured. . . . Such terms of agreement repose in the insurer the power to act for the insured, akin to authority a client vests in an attorney, or a principal in an agent – each a relationship of inherent fiduciary obligation.

Since Craig was decided, the Missouri courts have consistently recognized "[a]n insurer's right to control settlement and litigation under a liability insurance policy creates a fiduciary relationship between insurer and insured." Freeman v. Leader Nat'l Ins. Co., 58 S.W.3d 590, 598 (Mo. Ct. App. 2001) (citing Duncan v. Andrew County Mut. Ins. Co., 665 S.W.2d 13, 18 (Mo. Ct. App. 1983)). See also Varnal v. Weathers, 619 S.W.2d 825, 828 (Mo. Ct. App. 1981).

Under the terms of the liability policies issued to DFA and Cabool, Travelers had a duty to defend its insureds, and Travelers exercised this duty by hiring the same legal counsel to defend the driver, Cabool, and DFA in the Ward litigation. Travelers was vested with complete control of the litigation, and DFA was bound to cooperate fully with Travelers. We thus find that Travelers had a fiduciary relationship with DFA and Cabool.

Having determined that a fiduciary relationship existed between Travelers and DFA, we must examine whether DFA established the remaining prima facie elements. DFA claims Travelers breached its fiduciary duty by (1) assuming the defense of both DFA and Cabool without providing notice to either DFA or Cabool of the conflict of interest involved (the indemnification agreement); (2) failing to plead a cross-claim

-8-

against Cabool for indemnification in the Ward litigation or recommending such a cross-claim be pled; and (3) failing to provide notice to DFA before tendering $250,000 of DFA's money to Cabool's excess carrier. The evidence is uncontroverted that Travelers never informed DFA and Cabool of the conflict of interest involved in representing both insureds in the Ward litigation, never pled or recommended a cross-claim be pled against Cabool for indemnification and never notified DFA before tendering DFA's $250,000 deductible to National Union.

Substantial authority exists to support the legal proposition that if a liability insurer issues policies to insureds with conflicting or adverse interests and the insurer's duty to defend is later triggered, then the insurer must act equitably towards both insureds by providing separate and independent counsel for each insured at the insurer's own expense. See cases cited in 14 Couch on Insurance § 202:24 n. 89; 205:25 (3rd ed. 1999); 7C Appleman, Insurance Law & Practice § 4681 (2002 Cum. Supp.). See also Todd R. Smyth, Annotation, Duty of Insurer to Pay for Independent Counsel When Conflict of Interest Exists Between Insured and Insurer, 50 A.L.R.4th 932, § 3 (1986); S.R. Shapiro, Annotation, Liability Insurer's Rights and Duties as to Defense and Settlement as Affected by Its Having Issued Policies Covering Parties Who Have Conflicting Interests, 18 A.L.R.3d 482 (1968). But see In re Segerstrom, 247 F.3d 218, 228 (5th Cir. 2001) (applying Texas substantive law).

While Missouri has yet to decide whether an insurer's duty to defend includes an obligation to identify and address conflicts of interest arising between the insurer and its insured or between insureds, Missouri courts have, in the context of attorney-client relationships, clearly recognized a fundamental fiduciary principal: "Each client is entitled to the undiluted and undivided loyalty of his lawyer." Acorn Printing Co. v. Brown, 385 S.W.2d 812, 817 (Mo. Ct. App. 1964). In Acorn Printing, the court did not reject joint representation of all clients, recognizing that "some proceedings can be more adversary in form than fact," and "it sometimes happens that the conflict of interest tends to be more technical than actual." Id. (internal citation omitted). In

such cases, the court held that joint representation of adverse interests can occur but only after "complete disclosure and with the express consent of all parties concerned." Id. The court also cautioned that certain interests may be so adverse and conflicting, that joint representation, even with disclosure and consent, would violate public policy. Id. at 817-18. See Wolpaw v. Gen. Acc. Ins. Co., 639 A.2d 338, 340 (N.J. Super. Ct. App. 1994) (involving joint representation of multiple parties with adverse interests resulting in a failure to plead cross-claim).

For purposes of this appeal, we need not determine whether the indemnity provision between DFA and Cabool created a conflict of interest "so adverse and conflicting" as to preclude joint representation. Once Travelers issued liability policies to DFA and Cabool, Cabool's pre-existing contractual obligation to indemnify DFA presented a potential conflict of interest between the insureds. When the Ward litigation arose, this potential conflict of interest became realized, particularly in light of Travelers's interpretation of the applicable policies. In opposition to summary judgment, DFA presented evidence that Travelers knew of the Cabool/DFA transportation agreement containing the indemnity provision before it issued the policies and before it retained counsel, thereby creating a genuine and disputed issue of material fact.

If Travelers had prior knowledge of the indemnification provision, then, as a fiduciary placed in a superior position of trust, Travelers was obligated to (1) fully disclose the conflict of interest to DFA and Cabool, (2) explain the consequences of and alternatives to joint representation, and (3) obtain from both insureds their express consent to joint representation. In the absence of informed consent, Travelers's duty to defend obligated it to appoint separate and independent counsel to represent DFA and Cabool.

We also need not determine any issues regarding Travelers's classification of DFA as a "trucker engaged in the business of transportation for hire." However,

-10-

evidence concerning the classification may be relevant at trial to DFA's breach of fiduciary duty claim.

DFA offered evidence that Travelers knew about the DFA/Cabool business relationship and the indemnity provision and that Travelers identified the Ward claim solely as a Cabool policy obligation until settlement discussions became serious. From these facts, a jury could infer improper motive and concealment. A joint defense of DFA and Cabool, without litigating a cross-claim for indemnification, was certainly in Travelers's economic best interest, but such strategy may not have been in DFA's best interest.

### 2. Damages

Travelers contends, and the district court agreed, DFA's breach of fiduciary duty claim fails for want of damages. DFA argues, as a direct result of Travelers's failure to enforce DFA's indemnification rights, it has been deprived of the retention and use of its $250,000 deductible, and has been placed in the unfavorable position of either forfeiting recovery of its deductible or expending substantial time and expense to recover its deductible by bringing a collateral suit against Cabool, a valued business partner. These arguments reflect some evidence of damages caused by the alleged breach of fiduciary duty.

Damages may arise apart from the insurance coverage issues and the $250,000 deductible. A cross-claim in the Ward litigation, at Travelers's expense, would have saved DFA the time and the cost of separate litigation and would probably have been more palatable for DFA than DFA suing its good business associate in a separate action. A jury could conclude Travelers pursued its own self-interest at the expense of DFA, breaching its fiduciary duty and thereby damaging DFA and its economic interests.

-11-

We find DFA has shown adequate proof of damages for summary judgment purposes, thereby establishing a prima facie case for breach of fiduciary duty against Travelers. We conclude the district court erred in granting summary judgment to Travelers on this claim.

### B.    Reformation

Equitable reformation of an instrument is an extraordinary remedy which is available only "when it is shown by clear, cogent and convincing evidence that the instrument fails to reflect a valid underlying agreement between the parties due to 'fraud, mutual mistake, or such other grounds as will satisfy requirements for equitable relief.'" Brennan v. Missouri State Employees' Ret. Sys., 734 S.W.2d 230, 232 (Mo. Ct. App. 1987) (quoting Commercial Standard Ins. Co. v. Maryland Cas. Co., 248 F.2d 412, 415 (8th Cir. 1957)). The record reveals no evidence of fraud, mutual mistake, or other grounds warranting reformation. Rather, the record shows that DFA's and Cabool's broker submitted applications for insurance to Travelers who, in turn, issued two liability policies. DFA and Cabool accepted the policies as written and even renewed the policies.

"Missouri law imposes an affirmative duty on an insured to examine its policy promptly to ensure it contains the terms of coverage desired or agreed upon." Mark Andy, Inc. v. Hartford Fire Ins. Co., 229 F.3d 710, 718-19 (8th Cir. 2000) (citing Jenkad Enters., Inc. v. Transp. Ins., Co., 18 S.W.3d 34, 39 (Mo. Ct. App. 2000)). Once an insured accepts an insurance policy as written, it cannot later seek reformation, unless an examination of the policy would not have revealed the mistake. Jenkad Enters., 18 S.W.3d at 38-9 (declaring "[w]here an insured accepts a policy . . . it assents to the policy's terms and cannot thereafter seek to have the policy reformed on the ground of mutual mistake"). The mistake alleged by DFA was apparent upon examination of the policies. We therefore affirm the district court's ruling that DFA's acceptance of the Travelers policy precludes the remedy of equitable reformation.

## C.  Amendment of Pleadings

We review a district court's denial of a motion for leave to amend a pleading for an abuse of discretion.  See Knapp v. Hanson, 183 F.3d 786, 790 (8th Cir. 1999). The district court denied DFA's motion to amend its complaint to add Cabool as a party defendant, finding that DFA had advanced no valid reason for the amendment. A district court "does not abuse its discretion in refusing to allow amendment of pleadings to change the theory of a case if the amendment is offered after summary judgment has been granted against the party, and no valid reason is shown for the failure to present the new theory at an earlier time."  Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550-51 (8th Cir. 1997).  After reviewing the record, we conclude the district court did not abuse its discretion in denying DFA leave to amend once the court had entered summary judgment in favor of Travelers.  See Humphreys v. Roche Biomedical Labs., Inc., 990 F.2d 1078, 1082 (8th Cir. 1993).

## III.  CONCLUSION

For the reasons stated above, we reverse the district court's grant of summary judgment on DFA's breach of fiduciary duty claim and affirm the district court's grant of summary judgment on the remaining claims.  We remand the case for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.