# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4459

_____

Forest Products Industries, Inc.,          *
                                           *
            Plaintiff - Appellant,         *
                                           *   Appeal from the United States
     v.                                    *   District Court for the District of
                                           *   Nebraska.
ConAgra Foods, Inc.,                       *
                                           *
            Defendant - Appellee.          *

_____

Submitted: June 16, 2006
     Filed: August 22, 2006 **(Corrected 8/30/06)**

_____

Before BYE, LAY, and RILEY, Circuit Judges.

_____

BYE, Circuit Judge.

Forest Products Industries, Inc. (Forest) brokered food packaging materials for Malnove, Inc. (Malnove) to ConAgra Foods, Inc. (ConAgra). After ConAgra decided it no longer would work through brokers, Malnove offered Forest $100,000 to release it from any obligations under the brokerage agreement, which Forest accepted. Forest sued ConAgra, alleging ConAgra tortiously interfered with the brokerage agreement. The district court[1] granted ConAgra's motion for summary judgment, concluding no breach occurred due to Forest's release agreement with Malnove. We affirm.

___

[1]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

# I

Forest is a Missouri corporation serving as a broker of packaging materials. In the mid-1980s, Forest, through its president, Terry Wolfsberger, began acting as a broker for Malnove, a Nebraska-based supplier of packaging and packaging systems for consumer goods. Within a few years, Forest established a relationship with ConAgra, a Nebraska-based corporation, and facilitated the sales of Malnove's packaging and packaging systems to ConAgra's frozen food division. In 1998, Forest and Malnove formalized their relationship by entering into a brokerage agreement wherein Forest served as a broker between Malnove and ConAgra and received a three-percent commission on all sales to ConAgra. In August 2000, the parties renewed the agreement for an additional two years, rather than letting it automatically renew for one year under its own terms.

In January 2001, ConAgra's corporate purchasing personnel learned of Malnove's arrangement with Forest. ConAgra held a series of conversations with Malnove to question whether Forest's role as a broker added any value to the transactions. In June 2001, after Wolfsberger met with Malnove's sales supervisor, Richard Lawson, Malnove sent Forest a letter stating: "as per the specific request of ConAgra, we will no longer use Forest Products Industries as our representative to ConAgra Frozen Food." The letter was dated June 28, 2001, and it stated the effective date of the change to be June 30, 2001. The letter also contained an offer for $100,000 to Forest in return for a release from "any and all obligations and liabilities (whether past, present, future, contingent or otherwise)." Malnove discontinued utilizing the brokerage services provided by Forest relating to the ConAgra account on June 30, and Forest subsequently accepted Malnove's offer in September 2001, which specifically included the continuance of their relationship as to future accounts.

In January 2004, Forest brought this action claiming: (1) Malnove fraudulently induced it to enter into the settlement agreement; and (2) ConAgra tortiously

interfered with Malnove and Forest's business relationship. The claim against Malnove was settled out of court and is not part of this appeal. ConAgra filed a motion for summary judgment, arguing, in relevant part, Forest could not prove ConAgra tortiously interfered with its brokerage agreement with Malnove. The district court granted ConAgra's motion, finding Forest's agreement to Malnove's letter to be a complete release and discharge of any of the contractual obligations between Forest and Malnove. Thus, any claim of inducing or causing a breach of contract by ConAgra was necessarily precluded. Forest timely appealed.

II

We review the district court's grant of summary judgment de novo. Dayton Dev. Co. v. Gilman Fin. Servs., Inc., 419 F.3d 852, 855 (8th Cir. 2005). We also review do novo the district court's interpretation of Nebraska law. LG & E Capital Corp. v. Tenaska VI, L.P., 289 F.3d 1059, 1063 (8th Cir. 2002). Summary judgment is proper where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Employers Mut. Cas. Co. v. Wendland & Utz, Ltd., 351 F.3d 890, 893 (8th Cir. 2003).

To establish tortious interference with a business relationship under Nebraska law, Forest must prove:

> (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.

Macke v. Pierce, 661 N.W.2d 313, 317 (Neb. 2003) (internal quotation omitted). Tortious interference "requires an intentional act which induces or causes a breach or termination of the relationship." Pettit v. Paxton, 583 N.W.2d 604, 609-10 (Neb.

1998); <u>Wiekhorst Bros. Excavating & Equip. v. Ludewig</u>, 529 N.W.2d 33, 40 (Neb. 1995).

ConAgra points to <u>Pettit</u> to illustrate why summary judgment is proper. In <u>Pettit</u>, the plaintiffs signed an agreement with a closely-held family corporation to purchase a cattle ranch for $550,000. 583 N.W.2d at 606. The defendants, who had a longstanding feud with the plaintiffs, offered to buy the ranch for $600,000. <u>Id.</u> at 607. After the closing date passed without transfer, the defendants offered to purchase the land for $700,000. <u>Id.</u> The plaintiffs, after filing a lawsuit, eventually entered into a "Settlement Agreement" with the selling corporation, providing the plaintiffs would dismiss their specific performance action, release their claims against the president of the selling corporation, and agree to pay $600,000 to buy the ranch. <u>Id.</u> The agreement expressly reserved the plaintiffs' rights against the defendants, which the plaintiffs sought to enforce in their tortious interference claim. <u>Id.</u> The Nebraska Supreme Court did not allow recovery of the additional $50,000 needed to buy the ranch from the defendants, however, because although the corporation failed to perform at closing, it eventually performed the contract. <u>Id.</u> at 609. Thus, because there was no breach of contract, an essential element of tortious interference, no liability existed for tortious interference. <u>Id.</u> at 611.

The district court, in light of <u>Pettit</u>, held Forest's acceptance of the terms stated in Malnove's letter precluded the tortious interference claim because it operated as a complete release and discharge. Accordingly, Forest could not claim ConAgra induced or caused Malnove to breach the brokerage agreement. Forest contends <u>Pettit</u> is distinguishable because here there is an actual breach of the agreement.

Forest's analysis is misplaced, however, because it fails to give cognizance to the specific terms of the release agreement. First, the letter, dated June 28, 2001, states, "the effective date of this change will be June 30, 2001." The prospective nature of the letter indicates Malnove's desire to be released from the brokerage

-4-

agreement.  Under Nebraska law, "at any time before breach, the parties to an executory agreement may change its terms by subsequent agreement without a new consideration."  Campbell v. Kirby, 239 N.W.2d 792, 797 (Neb. 1976).  The letter reads:

> [i]n exchange for [the $100,000 consideration], you agree that, except for any future agreements that we may enter into with you, you are not entitled to any other compensation from Malnove for any reason whatsoever, whether pursuant to any written Brokerage Agreement or otherwise and *you hereby release Malnove from any and all obligations and liabilities (whether past, present, future, contingent or otherwise)* to you.

App. at 110 (emphasis added).  Although Forest did not agree to the terms of the letter until September 2001, it agreed to release Malnove for all "past, present, future, contingent or otherwise" obligations and liabilities.  By signing this new agreement and accepting the $100,000 consideration, Forest released Malnove from all of its contractual obligations under the brokerage agreement.

Forest's focus on the brokerage agreement is misplaced because the second agreement is determinative.  "There is no doubt that the parties to a contract may, by their mutual agreement, enter into a new or modified contract and extinguish the obligations of the old contract."  Simpson v. Norwesco, Inc., 583 F.2d 1007, 1012 (8th Cir. 1978).  Under Nebraska law, "[a] contract complete in itself will be conclusively presumed to supersede and discharge another one made prior thereto between the same parties concerning the same subject matter where the terms of the latter are inconsistent with those of the former so that they cannot subsist together."  Hasenauer v. Durbin, 346 N.W.2d 695, 698 (Neb. 1984) (internal quotation omitted).  There was no breach of contract because Malnove requested release before the date of change, and Forest agreed to the terms of the release precluding any breach of contract.  The new agreement, which the parties were free to enter into, discharged the old brokerage

agreement. In this sense, <u>Pettit</u> is analogous because in both instances there was no breach of contract to serve as the basis for a tortious interference claim.[2] Furthermore, Forest did not include in its acceptance any reservation of rights to assert a claim for tortious interference or any other claim against any third party, as the plaintiffs did in <u>Pettit</u>.[3] <u>Id.</u> at 607.

## III

Forest also asserts the district court conducted an incomplete analysis in its application of Restatement (Second) of Torts § 766 (1979), which also served as an underlying basis for the <u>Pettit</u> holding. Section 766 provides liability for improperly interfering with the performance of a contract. In its appeal, Forest illustrates the commentary to § 766, stating:

> The fact that the plaintiff has an available action for breach of contract against the third person does not prevent him from maintaining an action

---

[2]Forest correctly notes nothing in <u>Pettit</u> suggests a settlement with the breaching party precludes a separate action against the party inducing the breach. Our holding also does not stand for such a proposition, because Forest's argument erroneously assumes Malnove committed a breach.

Nebraska law recognizes a tortious interference claim when the alleged tortfeasor induces a breach of contract *or* a termination of the contracting parties' relationship. Malnove's letter, however, specifically requested Forest "to develop new business with other companies, on Malnove's behalf," and closed by indicating a desire to stay "in communication on a regular basis and [we] will certainly support your efforts in developing new accounts." Thus, Malnove clearly did not intend to terminate its overall relationship with Forest, but only to be released from its contractual obligations on the Con Agra account.

[3]Though the plaintiffs included a reservation of rights against the defendants in <u>Pettit</u>, the Nebraska Supreme Court ultimately held the reservation moot because the contract had been fully performed, and thus there was no breach to fulfill the tortious interference claim. <u>Id.</u> at 611.

under the rule stated in this Section against the person who has induced or otherwise caused the breach. The two are both wrongdoers, and each is liable to the plaintiff for the harm caused to him by the loss of the benefits of the contract. (Compare § 875). *Even if a judgment obtained against the third person for the breach of contract will not bar the action under this Section so long as the judgment is not satisfied. Payments made by the third person in settlement of the claim against him must, however, be credited against the liability for causing the breach and so go to reduce the damages for the tort.*

Restatement (Second) of Torts § 766 cmt. v. (1979) (emphasis added).

Pursuant to this section, Forest claims dual and separate causes of action against the breaching party and the party inducing the breach should be allowed here. Other jurisdictions have echoed this interpretation. See Doft & Co. v. Home Fed. Sav. & Loan Ass'n, 592 F.2d 1361 (5th Cir. 1979) (noting a separate cause of action against one party for breach of contract does not bar a cause of action against parties who induced breach of contract); Wright v. Nigh, 399 So. 2d 515 (Fla. Dist. Ct. App. 1981) (holding a settlement of the contract action does not preclude the tortious interference action); Phillips v. Mont. Educ. Ass'n, 610 P.2d 154 (Mont. 1980) (finding the availability of a breach of contract action against the one who breaks the contract no defense to one who induces the breach).

However, this argument once again erroneously characterizes Malnove's $100,000 payment as a settlement for breach of contract. The district court properly determined Malnove never breached the brokerage agreement because instead of rejecting Malnove's $100,000 offer and pursuing a remedy against Malnove for breach of contract, Forest chose to accept the offer and thereby released Malnove from its contractual obligations. Forest's ability to maintain actions against both Malnove for breach of contract and ConAgra for tortious interference is therefore immaterial. Comment v. and the authority cited by Forest necessarily apply only after a breach has occurred. Consequently, the district court did not err in granting ConAgra's summary

judgment motion because Forest could not meet all the elements required in its tortious interference claim.

## IV

The district court's judgment is affirmed.

_____