# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-1087

———————

| | | |
|---|---|---|
| Roger Hohn, formerly d/b/a | * | |
| Sioux Falls Advanced Physical | * | |
| Therapy, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of South Dakota |
| | * | |
| Stephen Spurgeon, | * | |
| | * | |
| Appellee. | * | |

———————

Submitted: September 27, 2007
Filed: January 23, 2008

———————

Before BENTON, BOWMAN, and SHEPHERD, Circuit Judges.

———————

SHEPHERD, Circuit Judge.

Roger Hohn, a South Dakota resident and the former owner of Sioux Falls Advanced Physical Therapy ("SFAPT" or "the clinic"), appeals from the district court's grant of summary judgment in favor of Dr. Stephen Spurgeon, an Iowa resident and a former Vice President/Medical Director for Wellmark, Inc., and denial of his motion to amend his complaint. The district court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons explained below, we reverse the grant of summary judgment and remand the matter to the district court for further consideration.

I.

In July 2002, SFAPT became a preferred provider for Wellmark, enabling Wellmark-insured patients to receive treatments from the clinic. Under the agreement, the clinic would submit claims directly to and receive reimbursements from Wellmark. As a result, the clinic could not bill Wellmark-insured patients for covered services.

One service SFAPT provided was a non-surgical back treatment known as vertebral axial decompression, or VAX-D. On September 18, 2002, Wellmark held a Medical Policy Advisory Committee ("MPAC") meeting which both Hohn and Dr. Jack Dodge, a SFAPT physician, attended. The MPAC discussed whether to continue funding the VAX-D procedure and decided to continue with the established practice of allowing reimbursement of VAX-D coded as "manual traction" with restricted allowance.

In December 2002, SFAPT received notice through a letter from Wellmark to Dr. Dodge that SFAPT's claims submitted by Dr. Dodge were under review and that payment would be delayed. Following this letter, Dr. Dale Andringa, Dr. Spurgeon's supervisor and Wellmark's Vice President and Chief Medical Officer, directed Dr. Spurgeon to visit SFAPT on March 14, 2003, and to meet with Hohn and Dr. Dodge concerning claims submitted by SFAPT. The parties provide inconsistent descriptions of this meeting, but agree that it concluded with Dr. Spurgeon becoming angry and leaving the meeting.

Following the March 14 meeting, Dr. Spurgeon directed that all communication with SFAPT concerning the VAX-D procedure be directed to him and he began supervising all claims submitted by SFAPT, although claims procedures were not part of his job duties. On March 17, Pam Duffy, a subordinate of Dr. Spurgeon, circulated an e-mail in which she noted that Dr. Spurgeon had directed that all VAX-D claims from SFAPT that were coded as anything except 97012 (manual traction) should be

denied "up front" for lack of clinical documentation. When Hohn contacted Wellmark employees in an effort to discover what documentation was lacking, he was unable to secure an answer. Hohn submitted copies of medical records to Wellmark, but Wellmark refused payment for the VAX-D treatments. Eventually, Wellmark terminated its contract with SFAPT, while $368,000 in uncollected claims remained.

Hohn initiated this action against Dr. Spurgeon alleging that Dr. Spurgeon had tortiously interfered with Hohn's expected business relationship with Wellmark. After Dr. Spurgeon moved for summary judgment, Hohn sought to amend his complaint to clarify that Dr. Spurgeon had interfered with Hohn's relationship with Wellmark of South Dakota and Wellmark's insureds. The court postponed ruling on the summary judgment motion and the motion to amend the complaint until completion of the discovery process, after which Dr. Spurgeon renewed his motion for summary judgment with supplemental materials. Following a hearing, the district court entered an order granting Dr. Spurgeon's motion for summary judgment and denying Hohn's motion to amend his complaint. This appeal follows.

II.

We review the district court's grant of summary judgment and interpretation of state law de novo. Forest Prods. Indus., Inc. v. ConAgra Foods, Inc., 460 F.3d 1000, 1002 (8th Cir. 2006). As we review the district court's grant of summary judgment, we view the facts in the light most favorable to the non-moving party and apply the same standard as the district court: summary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Tamko Roofing Prods., Inc. v. Smith Eng'g Co., 450 F.3d 822, 829 (8th Cir. 2006).

A.

In this diversity action, South Dakota state law governs the substance of Hohn's claim. See Dairy Farmers of Am., Inc. v. Travelers Ins. Co., 292 F.3d 567, 572 (8th Cir. 2002). In order to succeed on a claim of tortious interference with a contract or business relationship claim, the plaintiff must prove the following elements:

1. the existence of a valid business relationship or expectancy;
2. knowledge by the interferer of the relationship or expectancy;
3. an intentional and unjustified act of interference on the part of the interferer;
4. proof that the interference caused the harm sustained; and,
5. damage to the party whose relationship or expectancy was disrupted.

Landstrom v. Shaver, 561 N.W.2d 1, 16 (S.D. 1997) (quoting Tibke v. McDougall, 479 N.W.2d 898, 908 (S.D. 1992)); see also McGreevy v. Daktronics, Inc., 156 F.3d 837, 841 (8th Cir. 1998).

South Dakota courts have explained that to maintain a tortious interference action, the plaintiff must demonstrate that there is "a 'triangle'–a plaintiff, an identifiable third party who wished to deal with the plaintiff, and the defendant who interfered with the plaintiff and the third party." Landstrom, 561 N.W.2d at 16. The district court determined that the "triangle" was missing in this case because Dr. Spurgeon was an employee of Wellmark and thus cannot be liable to Hohn for his role in the termination of the provider contract so long as Dr. Spurgeon was acting within the scope of his employment authority. See id. ("[A] corporate director cannot be held personally liable under this cause of action for conduct taken under a contract entered into by the corporation because the director can only act in the director's official capacity on behalf of the corporation."). The district court then considered Dr. Spurgeon's actions and determined, based largely on Dr. Andringa's "clear, concise"affidavit, that Dr. Spurgeon was acting within the scope of his employment.

The court found that Hohn's evidence purporting to create a genuine issue of material fact consisted of "general and conclusory statements" which did not create a genuine issue.

The first issue we consider is whether the district court properly determined that Hohn failed to present any evidence that creates a genuine issue of whether Dr. Spurgeon's actions were within the scope of his employment. Hohn argues that, despite Dr. Andringa's insistence that Dr. Spurgeon did not have the authority to unilaterally decide how claims from SFAPT would be handled, the Duffy e-mail demonstrates that Dr. Spurgeon made such an unauthorized decision and directed subordinate employees to act in accordance with his decision.

In 1993, the South Dakota Supreme Court adopted the reasoning of Nordling v. N. States Power Co., 465 N.W.2d 81 (Minn. Ct. App. 1991), rev'd, 478 N.W.2d 507 (Minn. 1991) and Bossuyt v. Osage Farmers Nat'l Bank, 360 N.W.2d 769 (Iowa 1985), proclaiming that "no cause of action for tortious interference with contract may be maintained against a corporate officer who, acting within the scope of his or her authority, discharges an employee." Nelson v. WEB Water Dev. Ass'n, 507 N.W.2d 691, 699-700 (S.D. 1993). The court quoted Bossuyt's reasoning that an opposite holding "would be [a] dangerous doctrine, and would subject corporate officers and directors continually to liability on corporate contracts . . . ." Id. at 700 (quoting Bossuyt, 360 N.W.2d at 779). The South Dakota Supreme Court reaffirmed this holding in Landstrom, indicating that its reasoning was not limited to the employment context. See 561 N.W.2d at 16 ("[A] corporate director cannot be held personally liable under [a tortious interference claim] for conduct taken under a contract entered into by the corporation because the director can only act in the director's official capacity on behalf of the corporation. . . . [T]o hold otherwise would make the director liable for interfering with a business expectancy between a plaintiff and a director with no identifiable third party."). In 2002, the court expanded its holding to exclude corporate officers and directors from tortious interference liability even "where the

officer or director acted in bad faith or outside the scope of employment." Mueller v. Cedar Shore Resort, Inc., 643 N.W.2d 56, 68 (S.D. 2002) ("The actions of directors are often indistinguishable from those of the corporations. It is for this reason that the overwhelming majority of jurisdictions refuse to hold corporate directors personally liable in tortious interference claims. . . . This is also the very rationale that spawned limited liability for corporations and the protection of the business judgment rule for directors.").

What the South Dakota Supreme Court did not say in Mueller is that employees who are *not* officers of the company are similarly excluded from liability for tortious interference when acting in bad faith or outside the scope of employment, and no other South Dakota case so holds. According to his job description, Dr. Spurgeon was the "Vice President/Medical Director, Resource Management" at Wellmark. See Appellant's Appx. at 26. In his brief, Dr. Spurgeon states that he was "an employee of Wellmark." See Appellee's Br. at 17. In light of his title, however, there is a question of material fact: whether Dr. Spurgeon was a corporate officer, as that position is defined by South Dakota courts, or solely an employee of Wellmark at the time of the alleged interference. If he was a corporate officer, the South Dakota cases would preclude this action, however, if he was only an employee, the court must consider whether Dr. Spurgeon was acting within the scope of his employment. We assume for the purposes of this decision that Dr. Spurgeon was solely an employee of Wellmark and leave for remand the question of whether Dr. Spurgeon was actually a corporate officer and thus able to invoke the South Dakota cases that exclude corporate officers from tortious interference liability.

Dr. Spurgeon contends that the district court properly relied upon Dr. Andringa's affidavit in determining that Dr. Spurgeon was acting within the scope of his employment. In his April 12, 2006 affidavit, Dr. Andringa claims that he is "familiar with many of the facts and circumstances surrounding [SFAPT's] non-compliance issues," that "Dr. Spurgeon . . . worked with Roger Hohn and [SFAPT]

to address the non-compliance issues," and that "Dr. Spurgeon was acting within the scope of his employment." Dr. Andringa's affidavit statement is conclusory and fails to describe what actions Dr. Spurgeon took on behalf of Wellmark in relation to SFAPT. See Fed. R. Civ. P. 56(e)(1) (affidavit in support of summary judgment motion shall set forth facts that would be admissible in evidence). In his October 4, 2006 deposition testimony, Dr. Andringa stated "categorically that Dr. Spurgeon did not have the authority, nor [was Dr. Andringa] aware that [Dr. Spurgeon] would have made any kind of unilateral decision stating that the [SFAPT] claim shouldn't be paid." When this testimony is considered in conjunction with the Duffy e-mail demonstrating that Dr. Spurgeon had, in fact, unilaterally directed VAX-D claims from SFAPT that were not coded as manual traction be denied "up front" for lack of clinical documentation, a genuine issue of fact remains concerning whether Dr. Spurgeon was acting within the scope of his employment. For this reason, we reverse the district court's grant of summary judgment to Dr. Spurgeon and remand the matter for further consideration.

### B.

The district court also denied Hohn's motion to amend his complaint by adding Wellmark's insureds, who were SFAPT patients, as the third parties necessary to form the tortious interference "triangle" under South Dakota law. The district court denied this motion, noting that there were no facts to suggest that Dr. Spurgeon acted outside the scope of his employment. In light of our holding, we also reverse the district court's denial of Hohn's motion to amend his complaint and remand for the district court to reconsider. Cf. Hayes v. N. Hills Gen. Hosp., 590 N.W.2d 243, 249-51 (S.D. 1999) (reversing grant of summary judgment where plaintiff-doctor alleged that patients and potential patients were identifiable third parties).

-7-

### III.

Accordingly, we reverse and remand this matter to the district court.

_____